C. C. MILLICAN v. J. C. McNEIL ET AL.

No. 727. Decided January 30, 1899.

1. Pleading—Conclusion of Law—Commissioners Court.

In a petition seeking damages of defendants for unlawfully preventing plaintiff from occupying the office of county assessor, after his election thereto, which showed that there were two bodies of men each claiming to be the Commissioners Court of the county, an allegation that one body, stated to be the "real Commissioners Court," was intimidated and prevented from approving his bond, and others, usurpers, procured to act as such court and reject a sufficient bond offered by him, states only a legal conclusion of the pleader, and is insufficient, on general demurrer, to enable the court to determine which of the two bodies constituted the court. (Pp. 401-405.)

2. Same.

In such case facts ought to have been stated which showed that the persons alleged to have been intimidated were lawfully selected and qualified or were de facto officers. (P. 405.)

3. Same—Office—Action of Usurpers Void.

The action of persons alleged to be usurpers of the office of commissioners, in rejecting plaintiff's bond, could not deprive him of the office to which he had been elected nor support an action for damages for loss of its fees. (Pp. 405, 406.)

QUESTIONS CERTIFIED from the Court of Civil Appeals for the First District, in an appeal from Harris County.

*A. C. Allen, Edgar Watkins, Frank C. Jones,* and *J. M. Gibson,* for appellant.—The first question should be answered in the affirmative. The pleader says the real Commissioners Court was composed of certain individuals, naming them; that certain other persons, naming them, were procured to act as said court, being usurpers and being a majority of the court, and that these usurpers acted under the direction of another person who was one of the defeated candidates for county judge and in no way connected with the court. It is not necessary to state all the steps by which a person becomes a public officer; such steps from a private citizen to a public servant are but links in the chain of evidence that shows the title to the office. We state the fact that he is the "real" officer or that he is not the "real" officer, but a "usurper," and we introduce the evidence thereof on the trial. It has been held sufficient to say that a man was "duly elected" to an office. Church v. Walker, 10 S. D., 90, 72 N. W. Rep., 101.

It is not necessary to set forth the time, manner, and circumstances of an election or appointment or the details or the regularity of the proceedings by which he was inducted into office. Kelly v. Breusing, 33 Barb., 123; Hulburt v. Young, 13 How. Pr., 413.

The facts the pleader wished to state were that certain men were the real county commissioners of Brazoria County and certain other men usurpers. In the language of Judge Wheeler, "The simple allegation of the fact is sufficient without detailing a variety of minute circumstances which merely conduce to prove the truth of it. To require all those circumstances which constitute but the evidence of facts to be stated would lead to inconvenient detail and intolerable prolixity in pleading." Wells v. Fairbank, 5 Texas, 582-585; Van Alstyne v. Bertrand, 15 Texas, 177.

*Masterson & Masterson, Munson & Munson,* and *Duff & Duff,* for appellees.

BROWN, ASSOCIATE JUSTICE.—The Court of Civil Appeals for the First Supreme Judicial District has certified to this court the following statement and questions:

"The appellant brought this suit in the District Court of Harris County against appellees, J. C. McNeil, Steve Munson, Henry Munson, Travis L. Smith, E. S. Weinger, J. E. Williams, and H. Masterson, the last named being a resident of Harris County, and the rest of Brazoria County. The petition, after alleging that the plaintiff was a qualified voter of said county of Brazoria, and had been a resident thereof for more than two years prior to the 3d day of November, 1896, and that he was in the enjoyment of a good reputation, and that he possessed the confidence and respect of the people in said county, and of the people of many other counties also, avers that at a general election held in said county on said 3d day of November, 1896, plaintiff was duly elected at said election to the office of county assessor; that plaintiff was competent

to discharge the duties of said office and that he was entitled to the emoluments of same, and that said office was worth the sum of $8000 during its term, and, after giving the names of each and all the candidates for offices of said county, who were elected at the same time that the plaintiff was, the petition further avers that on the 11th of November, 1896, the Commissioners Court of said county issued to plaintiff a certificate of election, and plaintiff received notice thereof on the 12th of December, 1896, and after giving the name of each candidate for a county office at said election who was defeated, including among the names that of defendant H. Masterson and his brother, A. R. Masterson, who is elsewhere in the petition alleged to have been the county judge previous to and at the time of said election, the petition charges, that a few days after the election, the said defendants, actuated by hatred and ill will against the plaintiff, and by a desire to further their own selfish interests, and that of their friends and kindred and the interest of factional bias and prejudice, and intending and conspiring to injure and defraud the plaintiff, did combine and confederate to hinder and defeat him from qualifying for the office to which he had been elected, and, as a means to that end, to prevent the approval of his official bond, or any he might tender, by the Commissioners Court and thus to defeat him from obtaining said office, and for this purpose, immediately after the election, they began to arouse the personal bias and prejudice of their friends and partisans in said county, and to plan and work up an organization, which the plaintiff believes then and is now called the White Men's Union or Taxpayers Union of Brazoria County, and by means of fraudulent statements and misstatements about plaintiff and the other candidates elected with plaintiff at said election, stating in substance, among other false things, that plaintiff was a corrupt politician, a social and political outcast; that he was a defaulter in a previous office, and was morally and intellectually unfitted to hold said office; that he and the others elected with him were combined together and engaged in a scheme to excite the prejudices of the negroes in said county, who outnumbered the whites in said county, for the purpose of perpetuating themselves in office, and to array said negroes against the material interests and well being of the white people, and especially the property owners, and to turn over the government of said county into the hands of ignorant and illiterate negroes and vicious and corrupt white men; that if plaintiff and his political associates were permitted to obtain the offices to which they were elected, the plaintiff and his said associates would waste the funds of said county; would corruptly and dishonestly run their offices and thereby rob the taxpayers; and that in the end such administration of the affairs of the county would encourage the ignorant and vicious element of the negroes to be domineering and insulting to the white people, and would result in bloodshed and race riot. All of which statements the petition avers are false; that the said defendants falsely represented that their only purpose was to secure good and sufficient bonds from those elected to office in the county, when their real purpose was to

deprive plaintiff and others elected with him to office of the offices to which they were respectively elected, and to place others from among their friends and partisans in said offices. The petition avers that there were others, whose names are given, and others besides, whose names are unknown, but whose names are known to the said defendants, who joined said organization, the White Men's Union, or the Taxpayers Union, in December, 1896, and who by means of the false and malicious statements and charges aforesaid, and by threats, did incite a large number of people, not members of said union, to acts of hostility and to threats of active violence against the plaintiff, and against the other candidates elected with him, and to become active agents and abettors of the defendants in the scheme to injure plaintiff, to put him in fear of his life, to frighten his friends from coming to his assistance, to wound him in his feelings, to hurt him in his reputation as an honorable man and law abiding citizen, and destroy public confidence in him, and to deprive him of the office to which he was entitled; that said defendants did so act and so work upon the members of said organization, did so persuade them to so act, and did so persuade, threaten, and intimidate plaintiff's friends and the property holders of said county as to render it very difficult for plaintiff to make his official bond with solvent sureties thereon, and that when plaintiff did, despite the efforts of defendants, make said bond and had tendered the same to the Commissioners Court, and before the said court had passed upon same, the said bond being in everything a sufficient official bond for said office, and before he could take his oath of office, the said defendants, continuing the false and fraudulent acts heretofore set out, by threats and intimidation, and acts of open hostility against the plaintiff, surrounded the Commissioners Court while considering plaintiff's bond with a crowd of men armed with deadly weapons, and by threats of violence against those who should go surety upon plaintiff's bond and those who should approve the same, openly declaring that the plaintiff and J. L. Dumars, elected to the office of county judge, and other candidates elected on same ticket with plaintiff (plaintiff being a republican and the defendants democrats and populists), should not have said offices, if defendants and others acting in concert with them had to involve the county in bloodshed; and if defendants had to wade in blood of the plaintiff and his friends; and by such threats and acts, defendants did prevent the real Commissioners Court, whose names are given, from acting upon said bond; and procuring the said A. R. Masterson, the County Judge, one J. C. McNeill, and one J. L. Smith, and one N. M. King, and one Frank Jones to act as said Commissioners Court, the said A. R. Masterson, the said McNeill, and said Smith being usurpers of office in said Commissioners Court, who, acting as the majority of said court under the direction of H. Masterson, and in their own wrongful purpose, fraudulently rejected the said official bond the plaintiff had tendered, although the same was in all respects formal and sufficient, and although there were solvent sureties qualifying said bond for double the amount of the penalty allowed by law, and

did illegally and fraudulently deny plaintiff further time in which to make and present another bond with sufficient sureties, and said defendants did thus procure said court to declare vacant the office to which plaintiff was entitled, and thus deprive him of the emoluments of the same, to his damage in the sum of $8000, and the petition further alleged that by reason of the wrongs and injuries set out theretofore, plaintiff was greatly damaged in his reputation and in the eyes of the public, was subjected to great humiliation and disgrace both from the false statements and fraudulent reports circulated by said defendants and from the loss of said office.

"In addition to the foregoing statement, we copy verbatim the following paragraph from the plaintiff's petition:

" 'That when the plaintiff did finally in the time allowed by law, despite the efforts of said defendants, make said bond, and had tendered it to the Commissioners Court of said county, which by law must pass upon and approve the same, and before the Commissioners Court of said county had passed upon the same, the said bond being in everything a sufficient official bond for said office, the said defendants continuing the false and fraudulent acts heretofore set out, by continued threats, intimidation and acts of open hostility against plaintiff and by other illegal means, surrounded the Commissioners Court of said county when considering plaintiff's bond and his rights to said office, with a crowd of men armed with deadly weapons, by various open, hostile and violent and threatening acts against the plaintiff and those who should go upon his bond and those who should approve the same, openly asserting that the said plaintiff, the said J. L. Dumars and the other candidates who had been elected with the plaintiff, and who had not joined said organization or union, should not have said offices, if said defendants and the others had to involve the county in bloodshed and if the said defendants had to wade in the blood of the plaintiff and his friends up to their necks, and words of like hostile import and effect, and they did prevent the real Commissioners Court from acting upon said bond, which said real Commissioners Court was then and there composed of the following named persons: A. R. Masterson, county judge, George Melgoard, commissioner of precinct No. 1, H. H. Diggs, commissioner of precinct No. 2, M. Spears, commissioner of precinct No. 3, Martin Armstrong, commissioner of precinct No. 4, and procuring the said A. R. Masterson (who for his own interest had joined said scheme), one J. C. McNeill and J. L. Smith and one N. M. King and one Frank Jones to act as said court; the said A. R. Masterson, the said J. C. McNeill and the said J. L. Smith being usupers of office in said Commissioners Court, who acting as the majority of said court, under the direction of H. Masterson, and in their own wrongful purpose, fraudulently rejected the said official bond the plaintiff had tendered, although the same was in all things formal and sufficient, and although there were solvent sureties qualifying upon said bond for double the amount of penalty allowed by law, and to deny illegally and unjustly and fraudulently to said plaintiff further time in

which to make and tender another official bond with sufficient sureties, did thus procure said court fraudulently to declare said office of county judge vacant, and unlawfully by their wrongful acts and frauds, did then and there wrongfully deprive the plaintiff from the emoluments and profits of said office, to his actual damage in the sum of eight thousand dollars, the reasonable fees of said office.'

"1. Are the allegations stated sufficient to show, on general demurrer, that the body referred to as the real Commissioners Court was the lawful court and that the other body referred to and alleged to have been composed partly of usurpers was not such a court? In other words, are the facts sufficiently stated to enable the court, on general demurrer, to determine which of these bodies, if either, constituted the court?

"2. Do such allegations admit of the construction that the body which acted on the bond, at the time of such action, constituted the court?

"3. If the first mentioned body is to be considered the lawful court and the other body as not being a court, does the fact that defendants intimidated the former body and prevented it from acting and then procured the action stated from the other body give a cause of action upon the allegation that thereby plaintiff was deprived of his office?

"4. Should it be held that, upon the allegation, the body which rejected the bond was the Commissioners Court with power to pass upon it, then are those defendants who were members of it exempt from liability for their action, under the facts alleged, and if so can the other defendants be held liable for procuring such action in the manner and by the means alleged?"

To the first and second questions, we make the following answers: The allegations contained in the plaintiff's petition are not sufficient to enable the court to decide which of the two bodies of men constituted the Commissioners Court of Brazoria County.

It appears that there were two distinct bodies of men, each claiming to be entitled to exercise the powers of the Commissioners Court of that county. The plaintiff alleges one set to have been the *real* Commissioners Court, and claims the right to recover upon the ground that they were, by the defendants, put in fear of their lives and intimidated so that they were deterred from approving his bond as assessor of that county. To entitle him to recover upon this ground, it must be made to appear that the persons named were the lawful officers charged with the duty of passing upon his official bond. The averment in the petition that they constituted the "*real* Commissioners Court" only states a legal conclusion of the pleader, and furnishes no data upon which the District Court could determine the issue of authority. In such state of case, facts ought to have been alleged which showed that the persons, claimed by plaintiff to have been the court, had been lawfully selected to perform the functions of those officers, and had qualified according to law, or such facts as would show that they were de facto officers.

Another ground of recovery in connection with the former is that the defendants, having intimidated the members of the *real* Commissioners

Court and having thus prevented the approval of the plaintiff's bond by it, procured another body of men named in the petition to usurp the offices of commissioners and judge, and to reject the bond and declare the office of assessor vacant. The facts alleged must be taken as true upon the demurrer, and being true, the action of the usurpers in rejecting the bond and declaring the office vacant, was absolutely void and did not and could not deprive the plaintiff of the office to which he claims to have been lawfully elected. The only damage alleged to have been occasioned to the plaintiff is the loss of the office, and, since he was not deprived of it by the action of the alleged usurpers, his petition shows no cause of action against them or any person who acted with them.

Questions 3 and 4 are predicated upon conclusions not reached by this court, and therefore do not require to be answered.