EIKHOFF *v.* CHARTER COMMISSION OF THE CITY OF DETROIT.

1. STATUTES—CONSTRUCTION.

It is a well-established rule of statutory construction that where powers are specifically conferred they cannot be extended by implication: it is to be inferred that no other or greater power was given than that which the statute specifies.

2. MUNICIPAL CORPORATIONS—DETROIT CHARTER COMMISSION.

Charter commissions elected pursuant to the provisions of Act No. 279, Pub. Acts 1909, as amended by Act No. 203, Pub. Acts 1911 (2 How. Stat. [2d Ed.] § 5442 *et seq.*), are not legislative bodies, but are independent of and distinct from the common council, which is the sole legislative agency of the municipality.

3. SAME—EXPULSION OF MEMBER—APPOINTMENT.

The charter commission of the city of Detroit has no jurisdiction to expel a member of the commission duly appointed for the unexpired term of a member who has resigned. The writ of prohibition will issue to restrain an attempted exercise of power to expel.

4. PROHIBITION—OFFICE OF WRIT—PUBLIC OFFICER—CHARTER COMMISSION.

Prohibition is the proper remedy to restrain the attempt of the Detroit charter commission to oust a member of the body from his office, after a hearing and determination that were void for want of jurisdiction.

OSTRANDER and KUHN, JJ., dissenting.

Petition by Henry J. Eikhoff against the charter commission of the city of Detroit for writ of prohibition to restrain respondent from proceeding to oust petitioner from his office as a member thereof. Submitted June 17, 1913. (Calendar No. 25,759.) Writ granted July 18, 1913.

*Proctor K. Owens,* for petitioner.

*Richard I. Lawson,* for respondents.

McALVAY, J. Upon the application of petitioner a writ of prohibition issued against respondents, who were required to show cause to this court on its return day why said writ should be vacated, and said matter has been submitted to the court upon briefs and oral arguments. The respondent charter commission of the city of Detroit is a body authorized and created under and by virtue of the provisions of Act No. 279, Pub. Acts 1909, as amended by Act No. 203,

Pub. Acts 1911 (2 How. Stat. [2d Ed.] § 5442 *et seq.*), and, as its name implies, it is a body created for the purpose of formulating and submitting a municipal charter to the qualified electors of the city of Detroit.

Under this legislation proceedings were taken and members of respondent charter commission were duly elected and qualified. Very soon afterward a vacancy occurred in said charter commission by the resignation of William T. Dust, one of its members. On June 2, 1913, following such resignation, petitioner Henry J. Eikhoff was, by virtue of the statute, duly elected by said charter commission to fill such vacancy, and immediately after such election he qualified as a charter commissioner by taking the oath of office as prescribed by law, and entered upon its duties. Afterward, without notice to petitioner, and without any charges being preferred against him for any cause or misconduct whatever, and without any hearing had, a resolution was introduced and taken under consideration by said charter commission proposing to vacate the seat of petitioner, to which he had been chosen and elected by said charter commission. Thereupon, pending action under said resolution to oust him as a member of said charter commission and summarily deprive him of all his rights therein, petitioner made application to this court for its writ of prohibition to restrain and enjoin such action. Pending the consideration of such application by this court, and before said writ issued, the said charter commission proceeded to and did pass such resolution declaring the seat of petitioner vacant, and ousting him from membership in said charter commission. The case has been considered by this court, and evidently also by counsel for the charter commission in its status as of the time of filing of the petition.

The answer and contention of the respondent charter commission to the order to show cause is based upon the grounds that said commission is a legislative

body in its essential and component parts, with inherent power to pass upon the qualifications of its own members, and that its action in this regard is not reviewable, but final and conclusive; that the power to fill vacancies in its membership carries with it the power of removal.

Section 20 of Act No. 279, Pub. Acts 1909 (2 How. Stat. [2d Ed.] § 5442), as amended, provides as follows:

"The charter commission shall convene on the second Tuesday after the election, at the place designated therefor. The city clerk shall preside at the first meeting, shall administer the oath of office to the members-elect, and shall act as clerk of the commission. It shall be the sole judge of the qualifications, elections and returns of its own members, choose its own officers, except clerk, determine the rules of its proceedings and keep a journal. A roll call of its members on any question shall be entered on the journal at the request of one-fifth of its members, or less if it shall so determine. It may fill any vacancy in its membership, and it shall fix the time for the submission of the charter to the electors. No member shall receive compensation for more than 90 days and only for actual attendance. A majority of all the members shall constitute a quorum and its sessions shall be public."

The foregoing is the section upon which this respondent relies as conferring the powers and authority claimed by it in its contention that the action taken, looking towards ousting petitioner, was justified and legal.

Without giving any extended statement of the provisions of this legislation, it is proper to say that it was enacted for the purpose of providing a body which would formulate new charters for cities in this State, or amend charters already in existence, to be submitted to the electors for acceptance or rejection. The question of its constitutionality is not before the court. It contains other provisions from which may

be determined the status of the charter commission as a body, the functions it may exercise, and the limitation of its powers and authority. Until recent years the incorporation of cities in this State has been accomplished by special legislation, or what have been known as "Local Acts." Without doubt one of the principal reasons for the legislation now under consideration was to harmonize municipal government in the different cities, and also apply the principle of local self-government, which has always been favored in this State. The creation of charter commissions was intended to facilitate the preparation of charters to be submitted to the consideration of the electors.

Provision is made by the machinery of this statute for the selection and election of members of said charter commissions. The power and duties of these commissioners are all fixed by this statute, and are confined to the limits of the municipality in which they are elected. They are therefore local officers elected for the sole purpose of framing and proposing charters to be submitted to the electors within such municipality for acceptance or rejection, at an election to be held upon a date to be fixed by the charter commission. The date on which the charter commission shall convene after its election and proceed to its duties is fixed by this statute, as is also the time when the charter to be framed shall be completed; this latter period being limited to 90 days after the commission convenes, as provided by sections 15 and 20, which must be construed together. The provision of section 15 is as follows:

"The charter commission shall convene within ten days after election and frame a charter for said city within ninety days thereafter"—while section 20 provides that: "The charter commission shall convene on the second Tuesday after election at the place designated therefor," etc., as already quoted.

This section fixes with absolute certainty the date

when the commission shall convene, clearly showing the legislative intent to make no change as to the time within which the work of the commission is to be completed, by leaving the time unchanged and enacting the provision that "no member shall receive compensation for more than ninety days, and only for actual attendance."

We have stated all of the powers and authority specifically conferred upon charter commissions by this legislation. It is a well-established rule of statutory construction that where powers are specifically conferred they cannot be extended by inference, but that the inference is that it was intended that no other or greater power was given than that specified. It may be further said that the legislature recognized in this statute that the legislative body of each municipality is its aldermen or common council, which are specifically described as such in sections 18 and 19.

It is not contended on the part of this respondent that the charter commission of the city of Detroit was given express authority to oust any member from his office, but it is urged that, because of the following provisions quoted from section 20: "It shall be the sole judge of the qualifications, elections and returns of its own members," and "it may fill any vacancy in its membership"—the inference to be drawn is that it is a legislative body, with full authority to act, and it is compared with a State constitutional convention in that respect. We think that the matter of inference has already been disposed of, and that the only possible comparison between its powers and the powers of a constitutional convention lies in the words which make the charter commission "sole judge of the qualifications, elections and returns of its own members." The question as to whether a constitutional convention is a legislative body is not involved in the case.

This respondent is not a body created by the State

Constitution, nor do we find that there is anything in the statute under consideration which makes it a legislative body, and the powers granted making it the sole judge of the qualifications and elections of its members and to fill vacancies do not *per se* make it such.  Our attention has not been called to any legislative acts which it has been given power to perform, nor have we, from an examination of the entire act, found that it contains any such delegation of power. None of the acts permitted or required under this law by charter commissions can be construed or defined as legislative acts in the sense in which the word "legislative" is used when we speak of the three recognized branches of our republican form of government.  The legislature by this statute created charter commissions as instruments, under its specific terms, to prepare charters for cities to be submitted to the electors, and to become the fundamental law of such municipalities only when accepted by a majority voting thereon.  Our conclusion, therefore, is that we cannot agree with the main contention of respondent that these charter commissions are legislative bodies.

The next question to be considered is whether this statute confers upon charter commissions the power to oust one of their members.  It is not contended that such power is specifically granted by this statute.

Whether or not members of these charter commissions are city officers within the meaning of that term as ordinarily understood and interpreted we need not determine.  But we do conclude that, when elected, they constitute a legally authorized body distinct from and independent of the common council, which is made the sole legislative agency of the municipality.

In the instant case a vacancy was created by the resignation of a member, and petitioner was duly appointed by respondent charter commission to fill such vacancy.  He accepted such appointment, and entered upon the duties of his office.  The weight of the

authorities holds that in such a case the appointment is made for the unexpired term. 23 Am. & Eng. Enc. Law (2d Ed.), p. 418, and cases cited; *Speed* v. *Detroit Common Council*, 97 Mich. 198 (56 N. W. 570) ; and *Speed* v. *Detroit Common Council*, 98 Mich. 360 (57 N. W. 406, 22 L. R. A. 842, 39 Am. St. Rep. 555).

Respondent charter commission has assumed the power and authority to remove petitioner and oust him from his office as a member of such commission, and has in fact actually passed a resolution to that effect. Such action was without authority of law, as was distinctly held in the cases of *Speed* v. *Detroit Common Council, supra.*

In view of our conclusions upon the principal question involved in this case, it will not be necessary to consider other questions discussed.

Respondent charter commission having failed to show cause why the writ of prohibition issued by this court should be vacated, and it appearing to the court that all the acts and doings of the said respondent taken in the premises to declare the seat of petitioner as a member of said commission vacant and ousting him from his office were without jurisdiction and void, said writ of prohibition is hereby declared and ordered to be and remain in full force and effect, without costs to either party.

STEERE, C. J., and MOORE, BROOKE, STONE, and BIRD, JJ., concurred with McALVAY, J.

OSTRANDER, J. *(dissenting).* The writ, issued June 10, 1913, served June 11, 1913, prohibits and enjoins respondent from taking further proceedings against Henry J. Eikhoff relative to holding his office as member of the charter commission of the city of Detroit. His seat was declared vacated before the writ was served, perhaps before it was granted. The writ also prohibits interfering with the "free access of said petitioner * * * in and about the execution of

his duties as a member of said charter commission." It is alleged in the petition that a committee of the respondent body held a public meeting to discuss, and in which was discussed, the advisability of a charter provision for the nonpartisan election of office holders, citizens present taking part in the discussion. Petitioner appeared in this meeting "and discussed said question from the standpoint of a private citizen, and not as a member of the charter commission." He said, among other things, "I have heard several persons remark that the charter commission is a 'joke.'" This remark he says was incorrectly reported through the press and otherwise, and, as reported, incensed and enraged various other members of the commission, who at once conspired together to oust petitioner from his position as member of the commission. The public meeting mentioned was held on the evening of June 2d, and on June 3d a resolution was introduced by a member of the commission, during its sitting, that "the seat now occupied by Henry J. Eikhoff as a member of this body be, and the same is hereby, declared vacated." This resolution, under the rules of procedure, lay upon the table. It was adopted on the morning of June 10th. It seems that no charges were preferred against petitioner, and there was no trial or examination during which he was called upon, or had opportunity, to defend himself.

The answer of respondent says that, being a member of the charter commission, petitioner publicly stated, at the meeting referred to, that the charter commission was a joke, with the purpose of bringing public ridicule and disgrace upon the commission, to belittle and humiliate the commission and the members thereof. It is further stated in the answer, and is not traversed, that, conceiving he had a remedy by injunction against action upon the aforesaid resolution, petitioner filed a bill in the circuit court for Wayne county, in chancery, charging therein that—

"Some of the members of said commission, realizing that your orator could not be influenced to vote on any and all amendments to said charter which they desired, and realizing that in all probabilities he would be the means of obstructing some of the arbitrary amendments to the charter of the city of Detroit which would be detrimental to the citizens and favorable to the favored few, they were threatening to start and did start proceedings to hinder and interfere with your orator in the performance and execution of his duties as a member of the charter commission, and threatened to oust him out of his office as a member of the charter commission of the city of Detroit, and threatening to declare the office vacant in which your orator had been elected and duly qualified, and unless restrained by injunction  *  *  *  will  *  * * vacate said office, to the damage of your orator in the sum of upwards of $100," also working injury to his reputation.

These public charges, the answer sets out, were made before the passage of the resolution ousting the petitioner. It is broadly averred by respondent that petitioner's remarks in the public committee meeting were correctly reported, and that it was after investigation that the action ousting petitioner was taken.

The writ of prohibition is preventive rather than remedial process, and the history of its use discloses few, if any, instances in which it has been employed to control or prevent action not judicial in character. Mr. Stevens, in his work on Michigan Practice [v. 2, § 475], says that:

"The Michigan statute upon the subject seems to contemplate that the writ is applicable to judicial proceedings only; and there is no reported case in Michigan where the writ has been granted to stay other than judicial proceedings."

His work was published in the year 1900, and the footnotes do not refer to *Speed* v. *Detroit Common Council*, 98 Mich. 360 (57 N. W. 406, 22 L. R. A. 842, 39 Am. St. Rep. 555), decided in 1894. In that case,

the writ was issued to prevent the common council of Detroit from investigating charges preferred by the mayor of the city against the city counselor, whom he asked the council to remove from office. In sustaining the right to employ the writ, this court said:

"Under the Constitution, the legislature may provide for the removal of municipal officers. It certainly has never been regarded in this State that the officer or body upon whom this power is conferred acts in a purely political, administrative, or legislative capacity. Such officer or body acts, and must of necessity act, in a quasi judicial capacity, and the method of procedure must be of a quasi judicial character. *Stockwell* v. *Township Board,* 22 Mich. 341; *Dullam* v. *Willson,* 53 Mich. 392 [19 N. W. 112, 51 Am. Rep. 128]; *Clay* v. *Stuart,* 74 Mich. 411 [41 N. W. 1091, 16 Am. St. Rep. 644]; *Fuller* v. *Attorney General,* 98 Mich. 96 [57 N. W. 33]. Such officer or body then becomes an inferior tribunal, amenable to the writ of prohibition when acting in excess of the jurisdiction conferred. In such cases it is of little consequence what name is given to the power conferred. The name cannot relieve it of its essential character. It would be a reproach to the law if it did not provide a speedy remedy by which such tribunals can be prohibited from the exercise of an excess of authority, or of an authority which they do not possess. We are of the opinion that the writ lies in the present case. *State* v. *Common Council* [53 Minn. 238], 55 N. W. 118 [39 Am. St. Rep. 595]; *People* v. *Cooper,* 57 How. Prac. [N. Y.] 463; 1 Dill. Mun. Corp. § 191 (4th Ed. § 253)."

It appears therefore that in that case the writ was issued to prevent threatened action which, if taken, would have been quasi judicial in character; the power to take the action being denied. Action of respondent vacating the seat of petitioner cannot be prevented. The writ has not performed, and cannot perform, any proper office, and therefore it ought to be vacated. The prohibition, in form a continuing one, against interference with petitioner in the perform-

176 MICH.—35.

ance of his duties as member of the commission is dependent upon, and an elaboration of, the prohibition against taking action to unseat him. To compel the commission to recognize as a member one whom it has already unseated is in effect to set aside the judgment of the commission by a writ of prohibition. The writ should be vacated.

KUHN, J., concurred with OSTRANDER, J.