# THE STATE ex rel. UNITED STATES FIDELITY & GUARANTY COMPANY v. ALFRED L. HARTY, Superintendent of Insurance.

## In Banc, January 25, 1919.

1. **PROHIBITION: Indemnity: Refusal to Pay: Revoking License: Merits of Claim.** In a proceeding to prohibit the Superintendent of Insurance from revoking the license of a guaranty company to do business in the State for refusal to pay certain disputed claims to an insurance company, the court is not concerned with whatever of merit may inhere in the claims further than the facts in regard thereto, as disclosed by the pleadings, may prove illustrative of the power of the Superintendent to enter and enforce the order of revocation.

2. ——: **Demurrer to Return: Admission: As to Facts and Legal Conclusions.** A demurrer to respondent's return to the preliminary writ in prohibition is in the nature of a motion for judgment on the pleadings, and its effect is to admit all facts properly pleaded in the return, and to such facts the court will look in determining the propriety of the issuance of the final writ, unless the tenor of the return is such as to authorize its construction as a demurrer. But statements of facts are to be distinguished from conclusions of law based thereon, for such conclusions are not admitted by the demurrer.

3. **PLEADING: Allegations of Official Duty.** General allegations as to duties created by statute are not statements of facts, but conclusive of law.

4. ——: **Usurpation of Judicial Power.** Where the burden of the action is the usurpation of judicial power by an executive officer no basis can exist for taking judicial notice of his official duties, but the only responsive pleading is a specific averment of the denied power.

5. ——: **Prohibition: Demurrer and Answer in Return.** A pleading which partakes of the nature of a demurrer as well as a return to relator's petition, that is, a pleading which in effect demurs to and answers the same subject-matter, is not to be commended, but, under the facts of this case, will be considered as a demurrer assailing the petition as for failure to state a cause of action.

6. **PROHIBITION: Available Against An Executive Officer.** The writ of prohibition is not only the process by which a superior court prevents an inferior one from exercising a jurisdiction with which it has not been invested by law, but is also available to

prevent an executive officer from performing an act judicial in its nature.

7. ———: **Power to Revoke License: Judicial.** Power to revoke the license of a guaranty company to do business in this State is in its nature judicial. Power conferred upon a public officer involving the exercise of judgment and discretion in the determination of qustions of right affecting the interests of persons or property as distinguished from ministerial power, is in its nature judicial.

8. ———: ———: **Failure to Pay Claim.** The Superintendent of Insurance has no power to revoke the license of a solvent guaranty company to do business in this State for its failure to pay a disputed claim of a complainant.

9. ———: ———: ———: **Statute: Insolvent Companies.** Under the statute (Sec. 7078, R. S. 1909) much latitude is given to the Superintendent of Insurance to determine the extent and character of the information upon which he will be authorized to revoke the license of a company to do business, as hazardous to the public and unsafe to its policy-holders; but the information must be of such a nature as to indicate that the company is unsound financially. If it is sound financially, the conduct of its affairs cannot be hazardous.

## Prohibition.

PERMANENT WRIT ISSUED.

*Joseph A. Wright* and *John M. Wood* for relator.

(1) While prohibition is the proper remedy to restrain inferior judicial tribunals and to keep them within proper bounds, it may also be invoked against (a) inferior ministerial tribunals, sometimes called *quasi*-judicial tribunals, possessing incidentally judicial power and (b) purely administrative bodies in extreme cases where no other remedies are reasonably available, preventing them from usurping judicial functions. High on Extraordinary Legal Remedies (3 Ed.), par. 764a; 2 Spelling on Injunction and Extraordinary Remedies (2 Ed.), par. 1744; 32 Cyc. 598; State ex rel. Ellis v. Elkins, 130 Mo. 90; State ex rel. Mosconi v. Maroney, 191 Mo. 531; State ex rel. Railroad Co. v. Johnston and Roach, 234 Mo. 338; State ex rel. United Railways Co. of St. Louis v. Wiethaupt, 238 Mo. 155;

State ex rel. Verble v. Haupt, 181 Mo. App. 18; Connecticut River Railroad Co. v. Commissioners, 127 Mass. 50; State ex rel. Nolan v. Clendening, 93 Ohio St. 264; People v. Sherman, 72 N. Y. Supp. 718, 171 N. Y. 684; People ex rel. Pintler v. Transue, 132 N. Y. 497; People ex rel. Jordon v. Witherspoon, 157 N. Y. Supp. 923; Harriman v. County Commissioners, 53 Me. 83; State ex rel. Marshall v. District Court, 50 Mont. 289; Baker v. Gooding County, 25 Idaho, 506; Bradley v. Board of Canvassers, 154 Mich. 274; State ex rel. Schloss v. Stevens, 34 Nev. 146; Prairie Oil, etc., Co. v. Cruce, 45 Okla. 774; State ex rel. Hahn v. Young, 29 Minn. 474; State ex rel. Pryor v. Axness, 31 S. D. 125; Brown v. Board of Election Canvassers, 45 W. Va. 826. (2) Sec. 7078, R. S. 1909, clothes the respondent with *quasi*-judicial powers in cases where an insurance or bonding company is insolvent or financially embarrassed; his duties, however, are wholly statutory, and unless the facts bring the particular company under investigation within the terms of the statute respondent has no authority to revoke the license. Bishop on Non-Contract Law, par. 785, 790; Fidelity Trust Co. v. Revelle, 266 Mo. 202; State ex rel. Commonwealth Trust Company v. Chorn, 269 Mo. 172; State ex rel. Inter-Insurance Auxiliary v. Revelle, 257 Mo. 529; Lamar Township v. City of Lamar, 261 Mo. 171; Bankers, etc., Co. v. Barnes, 81 Kan. 422; American Surety Co. v. Fishback, 95 Wash. 124; Wallace & Co. v. Ferguson, 70 Ore. 306; Welch v. Maryland Casualty Co., L. R. A. 1915E, 708, 147 Pac. 1046; Mutual Life Insurance Co. v. Prewitt, 127 Ky. 399; Volunteer State Life Ins. Co. v. Dunbar, 133 Tenn. 331; State ex rel. Martin v. Howard, 96 Neb. 278; Senn v. Metropolitan Life Ins. Co., 154 N. Y. Supp. 472. (3) The respondent is an administrative officer vested with *quasi*-judicial power, which power he now seeks to expand into purely judicial power, and thereby not only to exercise functions which belong solely to the courts, but if permitted to proceed in the premises, it would actually oust the courts of their jurisdiction.

Whether he entered an order requiring relator to pay under penalty of having its license revoked, or enter an order revoking the license, the effect would be the same. Lusk v. Atkinson, 268 Mo. 109; State ex rel. York v. Locker, 266 Mo. 384; State ex rel. v. Public Service Commission, 259 Mo. 704; Ocampo v. United States, 234 U. S. 91; People ex rel. Schau v. McWilliams, 185 N. Y. 92; People ex rel. Stewart v. Railroad Commrs., 160 N. Y. 202; Metz v. Maddox, 105 N. Y. Supp. 702; Tyson v. Washington County, 78 Neb. 211, 12 L. R. A. (N. S.) 350; Gulnac v. Board of Freeholders, 74 N. J. L. 543; Burnam v. Terrell, 97 Tex. 309; State ex rel. Board, etc., v. Briede, 117 La. 183; People ex rel. School District v. Van Horn, 20 Col. App. 215.

*Frank W. McAllister,* Attorney-General, *John T. Gose,* Assistant Attorney-General, and *Charles G. Revelle,* of counsel, for respondent.

(1) It is elementary that under our laws the writ of prohibition is granted only to prevent the usurpation of judicial power. Kalbfell v. Wood, 193 Mo. 687. The allegation of relator's petition herein, charging the usurpation of judicial power in a proceeding wherein respondent threatened to revoke relator's license unless it paid to the International Life Insurance Company a sum of money found to be due, having been denied by respondent's return, and the truth of that return admitted by relator's demurrer, the question of the usurpation of judicial power in that respect is removed from this case. (2) The return of respondent shows that he is exercising the power conferred upon him by statute with respect to the subject-matter over which he has exclusive control, and that such power is in no sense judicial, but ministerial. The proceeding by respondent to inquire into whether or not relator's further operations in the State are hazardous to the public, is a proceeding by way of investigation, and in no sense a judicial trial. State ex rel. v. Goodier, 195 Mo. 559.; Higgins v. Talty, 157 Mo. 291. Respondent was not acting judicially, but under the power conferred upon

him by statute with respect to a subject-matter over which he has exclusive control; therefore, the court's writ of prohibition will not lie. Higgins v. Talty, 157 Mo. 291; State ex rel. v. Goodier, 195 Mo. 562; Kalbfell v. Wood, 193 Mo. 675; State v. Hathaway, 115 Mo. 48; Casey v. Thompson, 42 Mo. 133; State ex rel. West v. County Courts, 41 Mo. 44. "An act is none the less ministerial because the person performing it may have to satisfy himself that the state of facts exists under which it is his right and duty to perform the act." State v. Hathaway 115 Mo. 49. The duties and acts which respondent proposes to perform, set forth in the return and admitted by the demurrer, being purely administrative or ministerial, and being clearly within the scope of the exercise of a reasonable discretion and expressly authorized by law, the writ of prohibition will not lie. State ex rel. v. Gregory, 83 Mo. 123; State ex rel. v. Goodier, 195 Mo. 551; State v. Hathaway, 115 Mo. 36; Higgins v. Talty, 157 Mo. 230. The acts which respondent proposes to perform are within the powers conferred upon him by statute, and relate to the subject-matter over which he has exclusive control. Secs. 6878, 6889, 7013, 7014, 7015, 7016, 7051, 7066, 7078, and 7079, R. S. 1909.

WALKER, J.—Prohibition to prevent respondent, the Superintendent of the Insurance Department, from revoking the license of relator, the Fidelity & Guaranty Company, to do business in this State, unless it complies with an order made by respondent requiring it to pay certain disputed amounts alleged in said order to be due by it to the International Insurance Company.

We are not concerned with whatever merit may inhere in the claims of the International Insurance Company against relator, further than the facts in regard to same, as disclosed by the pleadings, may prove illustrative of the power of the respondent to enter and enforce the order herein complained of. [State ex rel. Am. B. Ins. Co. v. McQuillin, 260 Mo. l. c. 173; Willow Spgs., etc. Co. v. Mt. Grove, etc. Co., 197 S. W.

(Mo. App.) 916.]   This order was based upon a complaint filed by the International Insurance Company with the respondent, as Superintendent of Insurance, to compel the relator to pay what are alleged to be just and past due claims arising out of a contract between the Insurance   Company and relator, aggregating the sum of $25,000, which the latter upon demand had refused to pay.   The pertinent portions of this complaint are as follows:

After formal allegations as to the corporate capacity of complainant and its authority to do business in this State as an insurance company, as well as that of the relator as a fidelity and casualty company, it is alleged that complainant deposited in a certain bank cash aggregating $25,000 for the times therein stated; that a contract for the payment when due of said sums, aggregating said amount, was made between the International Insurance Company and the bank, and that obligated itself, as by law it was authorized to do, as a fidelity and guaranty company, to secure the payment of same; that after said deposits were made and before any part of same was withdrawn, and while said con-. tract was in full force and effect, said bank wherein said deposits had been made became insolvent and was placed in charge of the State Banking Department for liquidation; that default has been made in the payment of the sums there deposited, the payment of which was guaranteed by relator; that notice of such default has been given to relator, and that complainant has in all other respects complied with the terms of the contract under which said deposits were made and upon which relator became a guarantor; that it became the duty of relator upon such default to pay to complainant the amounts of said deposits; that demand therefore has been made upon relator, which has wrongfully refused to comply therewith or to perform any part of its obligations under said contract.   The jurisdiction of the respondent is sought to be invoked by the International Insurance Company in this behalf in the following language: ''Complainant further states

and offers to show that the course of said United States Fidelity & Guaranty Company in relation to the above deposits and the above contracts and obligations is of such a character, and its repudiation of its aforesaid numerous obligations so flagrant, wrongful and unwarranted, as to make further operations on its part in the State of Missouri hazardous to the public.'' To this, the complainant appends the following prayer: ''Wherefore, complainant prays that said United States Fidelity & Guaranty Company be notified of this complaint and that the Superintendent of the Insurance Department fix and designate a time and place where it will hear complainant in support and establishment of the above charges, and that after such hearing and investigation, the said Superintendent of the Insurance Department make an order directing said United States Fidelity & Guaranty Company to meet and discharge its above obligations, and that failing to do so within ten days thereafter, the license and authority of said United States Fidelity & Guaranty Company to transact business in the State of Missouri be revoked.''

Upon the filing of this complaint, a hearing thereon was ordered by the respondent on May 28, 1918. On this date relator, appearing only for the purpose of challenging the jurisdiction of the respondent to entertain the complaint and execute the order therein prayed for, filed a motion to dismiss the proceeding. Summarized, this motion is as follows: that the allegations of the complaint are insufficient to bring the relator within the purview of the regulative power of Article VII, Chap. 61, Revised Statutes 1909, defining the duties and prescribing the power of the Superintendent of Insurance; that there is an absence of any averment in said complaint that the relator is insolvent, or in an unsound financial condition, or that it has failed in any particular to comply with the State law regulatory of companies of this character; that on the contrary, it is not only solvent and its capital stock in no wise impaired, but it has a large cash surplus; that the purpose is, and effect of said complaint, if granted, will be

to enforce the payment of the International Insurance Company's claims against the relator, the Fidelity & Guaranty Company, without a judicial determination of same, and thereby deprive the courts of their legitimate and exclusive constitutional and statutory jurisdiction in the matter here involved; that the Insurance Department has no judicial power, and in its attempted exercise of same it seeks to deprive the relator of its property without due process of law.

The Superintendent of Insurance overruled this motion to dismiss; whereupon, the Fidelity & Casualty Company applied to this court for a preliminary rule of prohibition herein. The petition therefor avers the corporate capacity of relator; its compliance with the law authorizing it to do business in this State; that it has filed with the Insurance Department a verified statement of its assets and liabilities showing its solvent and unimpaired condition; that same is true; that the financial strength of relator as therein disclosed is equal, if not greater, at the present time than when said statement was made, and that said condition is not questioned or denied either by complainant or respondent. Then follows a summary of said financial statement which is incorporated into and made a part of said petition, and a copy of the complaint heretofore filed with the Insurance Department by said International Insurance Company, and relator's motion to dismiss same, the substance of which has been stated.

The petition further alleges that on July 9, 1918, the relator submitted to respondent a written offer, set out therein, that in view of the suit brought by the International Insurance Company against the relator in the circuit court of the City of St. Louis, involving the same issue as the subject-matter of the controversy herein, relator, not as an admission of liability, but as evidence of good faith, would deposit the sum of $35,000 in the Boatmen's Bank of the City of St. Louis, to be held in trust by said bank as a guaranty of its ability to respond to any judgment rendered in said court in favor of said Insurance Company, and against relator.

Such deposit to be made within five days after the receipt of respondent's approval of same. That respondent has ignored said offer.

That respondent has threatened and is now about to revoke relator's right to do business in this State unless it pays, without a judicial determination, the alleged claims of the International Insurance Company against relator, thereby precluding the latter from making any defense it may have thereto in a court of competent jurisdiction. That in the absence of the issuance of this writ, relator is without remedy.

Further pleading, relator denies the jurisdiction of respondent either under Section 7078 or 7069, Revised Statutes 1909, in relation to the powers authorized to be exercised by respondent over insurance companies, specific averments in regard thereto being that no ground authorized by statute is stated in said complaint to authorize respondent's action herein; that the exercise of such power will deprive the courts of their jurisdiction conferred by the Constitution, and so far as respondent is concerned, such power is prohibited by exclusion under Article III, Constitution of Missouri; that the Legislature, by Section 7068, Revised Statutes 1909, has provided a complete and adequate remedy against relator in the event of its vexatious refusal to pay any just claim; that neither under the State nor Federal Constitution (citing same) can relator be deprived of its property in the manner herein attempted; that no statutory authority exists for same; and if respondent proceeds as he now threatens to do, that no appeal, writ of error or other means of review or redress remains for relator; that the exercise of the attempted power threatened by respondent will work irreparable damage to relator's reputation, standing and business; and that no relief is available except through the intervention of the Supreme Court, by its writ of prohibition, which power relator invokes.

Wherefore, relator being otherwise remediless, prays the court to issue its said writ herein to prevent respondent from the further hearing of said complaint

of the International Insurance Company and from re-
voking relator's license upon the evidence submitted;
that respondent's order overruling relator's motion be
set aside and for naught held; that he be prohibited
by the final order of this court from further proceedings
herein; and for other and proper relief.

Upon the filing of relator's petition, this court is-
sued its preliminary rule herein. Thereto the respond-
ent made return, the material portions of which are as
follows: That respondent is not a judicial officer and
is not attempting to exercise or enforce the functions
or powers of a court; that he has no knowledge as to
the correctness of relator's statement as to its financial
condition; he admits that the International Insurance
Company filed in his department the complaint against
relator; that May 28, 1918, was designated by him,
after notice, for the hearing of same; that on said
day relator appeared and filed its motion to dismiss the
Insurance Company's complaint; that it was respond-
ent's intention, unless prohibited by this court, to in-
vestigate the merits of said complaint and thereafter to
make such orders in the premises as to him might seem
right and just under the law; that he is charged offi-
cially with a general supervision over all companies of
the character of relator operating under the laws of
this State, with the consequent power of suspending or
revoking their right to do business when he has reason-
able cause to suspect that the further continuance of any
of such companies in business is hazardous to the pub-
lic or those holding policies in same; that he proposes
to inquire into and investigate the merits of the com-
plaint referred to and the general financial condition,
business methods, management, and affairs of relator,
to the end that he may ascertain and determine whether
there is reasonable cause to suspect that the further
operations and transactions on the part of relator will
be hazardous and unsafe to those holding policies
therein; that if he so finds, he proposes and intends,
unless prohibited by this court, to suspend or revoke the
license of relator; that it is not his intention to order

the payment of the claims of the International Insurance Company or any other company, but that said complaint has brought to his attention a knowledge of the flagrant and wrongful repudiation of its obligations by relator so unwarranted as to make its further operations in this State hazardous to the public; that unless prohibited, if the conduct of relator is shown upon an investigation to be such as alleged in said complaint, the further operations on the part of relator in this State will be hazardous to the public or those holding policies in relator, and he proposes to suspend or revoke its· license and deny it the further right to transact business in this State. Wherefore, he prays, etc., that the writ may be denied and the preliminary · rule dismissed.

To this, relator filed a general demurrer alleging that respondent's return did not state facts sufficient to constitute a defense to relator's petition.

I.   This demurrer is in the nature of a motion for a judgment on the pleadings. Its effect is to admit all **Pleading.**    facts properly pleaded in the return. To such facts we will look in determining the propriety of the issuance of the · final writ, unless the tenor of the return is such as to authorize its construction as a demurrer. [State ex rel. Warde v. McQuillin, 262 Mo. 1. c. 260;   State ex rel. Boyer v. Huck, 260 Mo. 140; State ex rel. v. Shields, 237 Mo. 1. c. 333; Wand v. Ryan, 166 Mo. 646.]   Thus limited, statements of fact must be distinguished from conclusions of law based on such facts, to which the admissive force of a demurrer has no application. [State ex rel. v. Aloe, 152 Mo. 466.] To illustrate, the averment that the respondent is not a judicial officer and is not threatening to exercise judicial powers is, so far as the averment itself is concerned, a mere legal conclusion. In pleading the authority of a public officer to do or not to do certain acts the same rule is applicable in regard to the necessity of a statement of the facts as in other cases. [Old Wayne Mut. Life Assn. v. Flynn, 31 Ind. App. 473;   Hintrager v.

276 Mo.—38.

Richter, 85 Iowa, 222; Goodhue v. Daniels, 54 Iowa, 19; Smith v. Kaufman, 3 Okla. 568; Millican v. McNeil, 92 Tex. 400.] In harmony with this rule, applicable in reason to officers as well as others acting individually, is the well recognized requirement, that an allegation of duty in terms is likewise a mere legal conclusion, and that the facts showing the existence of the duty should be alleged. [McPeak v. Railroad, 128 Mo. l. c. 636; Schueler v. Mueller, 193 Ill. 402; Baker v. Railroad, 106 Tenn. 490; Pittsburgh, etc., Railroad v. Peck, 165 Ind. l. c. 540.] This rule is especially applicable to general allegations as to duties created by statute, which are held not to be statements of fact but conclusions of law. [Rauh v. Brd. Commrs., 66 How. Pr. 368; Walsh v. Trustees, etc., 96 N. Y. l. c. 438; Humpton v. Unterkircher, 97 Iowa, 509; McGuinness v. Allison Realty Co., 46 Misc. (N. Y. App. Div.) 926.] This class of cases is clearly distinguishable from those against officers for failure. to perform duties required by statute on the ground that courts will take judicial notice of the law imposing the duties. Burns v. Moragne, 128 Ala. 493 is of this type. Where, however, as in the instant case, the burden of the action is the usurpation of judicial power, no basis can exist for such notice, and the only responsive pleading founded on the facts is a specific averment of the existence of the denied power. Further than the general nature of respondent's averment as to his official character, it may be said, when taken in connection with subsequent allegations as to the powers and duties of the respondent, to partake of the nature of a demurrer, as well as a return to relator's petition. This manner of pleading which in effect demurs to and answers the same subject-matter at the same time is, notwithstanding the liberal provisions of our statute (Sec. 1802, R. S. 1909) not to be commended (State ex rel. McEntee v. Bright, 224 Mo. 514). However, to the end there may not be a denial of substantial justice due to the strict application of this rule of pleading to a case of the character here under review, we will, as authorized under our holdings in State ex rel.

v. McQuillin, 256 Mo. 693, 165 S. W. 713, and State ex rel. Conners v. Shelton, 238 Mo. 281, consider the case as one on demurrer of the respondent assailing the petition as for a failure to state a cause of action. Otherwise, the return must be held as formless and futile of effect.

II.   Out of this conclusion arises the inquiry as to the amenability of an officer of the character of respondent to the restrictive provisions of prohibition.   This writ is most tersely defined as that process by which a superior court prevents an inferior from exercising a jurisdiction with which it has not been vested by law (State ex rel. v. Dist. Court, 5 Wyo. l. c. 232) ; or even with fewer words and more comprehensive in meaning, it is defined as a remedy provided by the common law to prevent the encroachment of jurisdiction (Hudson v. Judge Sup. Ct., 42 Mich. l. c. 248).   That usually luminous commentator on the English law defines it rather verbosely as a writ "directed to a judge and parties of a suit in any inferior court, commanding them to cease from the prosecution thereof, upon a suggestion that either the cause originally, or some collateral matter arising therein, does not belong to that jurisdiction, but to the cognizance of some other court."   [3 Bl. Com., par. 112.]   Bouvier, Rapalje, Wharton and other lexicographers have adopted substantially Blackstone's definition.   In the adjudicated cases in various jurisdictions are found similar definitions.   Their variance is due more to words than substance.   Despite the fact that the general terms of these definitions appear to limit the proceeding to inferior judicial tribunals, the facts in numerous cases in our own and other courts show that the power of the writ has frequently been exercised, when not directed against a court, to prevent the usurpation of judicial power.   For example, cases are not infrequent in this jurisdiction in which the writ has been invoked to prevent county courts from proceeding in excess of their prescribed powers.   [State ex rel

*Availability of Prohibition.*

v. Elkin, 130 Mo. 90; Hockaday v. Newsom, 48 Mo. 196; State ex rel. v. Clark Co. Justices, 41 Mo. l. c. 50; Howard v. Pierce, 38 Mo. 296; Tetherow v. Grundy Co. Ct., 9 Mo. l. c. 121.] These bodies, while recognized in designating them in the Constitution and the statutes as courts, possess few of the attributes of judicial tribunals. Their functions and powers are generally administrative and their appellation as courts is technically a misnomer. They are in the nature of commissioners or supervisors of the affairs of counties. Thus constituted, their appellation, or the fact that in certain instances they may act judicially, affords no reason for their supervision by prohibition. Such control when exercised over them by a superior court must find for its sufficient reason an attempted usurpation of judicial power, the prevention of which is the peculiar province of prohibition. Nor is the preventive power of the writ limited to the supervision of county courts, but may, where the action sought to be prohibited is judicial in its nature, be exercised against public officers. In State ex rel. v. Johnston, 234 Mo. 338, it was sought to prohibit a designated act of the Secretary of State. The right to the writ was not questioned on account of the lack of judicial character of that official, but because of the ministerial nature of the act. The court in thus ruling said that the writ was only amenable against the Secretary of State in cases where he assumes to exercise a judicial function. In Kalbfell v. Wood, 193 Mo. 675, we held that a certain act of Election Commissioners would not be prohibited, not because these were not judicial officers, but because the act sought to be prevented was not in itself judicial. A like ruling, based on the same reason, is found in Casby v. Thompson, 42 Mo. 133, which was a proceeding against the State Auditor. These cases authorize the conclusion that the nature of the act, as we said in State ex rel. v. Goodier, 195 Mo. 551, and State ex rel. v. Elkin, 130 Mo. 90, and not the general character of court or person proceeded against, determines the propriety of the proceeding. It is so held elsewhere.

[Conn. River R. R. v. Co. Commrs., 127 Mass. 50; 'People v. Burdett, 195 Ill. App. 255; A., T. & S. F. Ry. v. Corp. Com. Okla., 170 Pac. 1156; State ex rel. v. Brd. Ed., 19 Wash. 8; State v. Commrs. Roads, 1 Mill (S. C.), 55, 12 Am. Dec. 596 and notes; Eikhoff v. Charter Com., 176 Mich. 535, 142 N. W. 746.] The Supreme Court of South Carolina, in State ex rel. Hamer v. Stackhouse, 14 S. C. l. c. 427, thus crystalizes the rule as to the propriety of the writ, when invoked against other than a purely judicial officer or a court: "Nor has it [prohibition] been confined entirely to inferior judicial tribunals, as seemed first to be intended; on the contrary, it has been extended to other public functionaries, officials and persons charged with the performance of duties not strongly marked with a judicial character." This construction is authorized by our statute, Section 2622, Revised Statutes 1909, which provides that "the remedy afforded by the writ of prohibition shall be granted to prevent usurpation of judicial power, and in all cases where the same is now applicable according to the principles of law." The analogous reasoning afforded by the foregoing cases sustains the conclusion that under a proper state of facts construed in the light of the statute creating the office and defining the powers of respondent, he may be held amenable to prohibition.

III. Respondent is sought to be restrained from revoking the license of relator to do business in this State. This power, under a proper state of facts, is recognized by statute    (Sec. 7078, R. S. 1909), and is in its nature judicial. This is true whether construed in the light of one of our earliest cases (State to use v. Fry, 4 Mo. l. c. 121), defining judicial power as that whereby justice is administered according to the rights of those concerned; or under the more general definition, as that authority vested in a court, officer or person to hear or determine when the rights of persons or property or the propriety of doing an act is the matter to be determined (Merlette

*Judicial Power.*

v. State, 100 Ala. 1. c. 44; Grider v. Tally, 77 Ala. 1. c. 424); or as more particularly applicable to the matter at issue, as the power conferred upon a public officer involving the exercise of judgment and discretion in the determination of questions of right affecting the interest of persons or property as distinguished from ministerial power (23 Cyc. 620 and cases). The right threatened by respondent to be affected was one acquired and enjoyed in conformity with the law and its abrogation required not only a hearing upon the facts, but the exercise of discretion and judgment on the part of the respondent in its determination. Clothed with these characteristics, the proposed act must, therefore, be construed as judicial in its nature.

IV. Thus classified, it remains to be determined whether the refusal of the relator to pay the claims of the insurance company, until adjudicated by the courts, constituted such cause within the meaning of the statute (Sec. 7078) as to authorize the respondent to resort to his contemplated action to deprive the relator of its license. That such was his purpose is alleged in relator's petition, the affirmative allegations of which are admitted by the return thereto. This, we have held to have the effect of a demurrer, or if not so construed, this purpose is admitted by the statement in the return, that if the facts disclose that the claims have not been paid, the conduct of the relator in that behalf will be construed as hazardous to the public and its policy-holders.

The relation to the public of companies subject to supervision by the Superintendent of Insurance, under Section 7078, is primarily of a pecuniary nature. While much latitude is given the Superintendent in determining the extent and character of the information upon which he will be authorized to proceed, in a given case, it must, at least, be of such a nature as to indicate that the company to be supervised is unsound financially. Further than this, the law does not concern itself. If a company is a going concern in the sense that it

State ex rel. Guaranty Co. v. Harty.

possesses financial ability to transact its business as authorized by law, then it is not contemplated that it shall be subjected to official espionage, because the conduct of its affairs cannot reasonably be construed to be either hazardous to the public generally or its policy-holders particularly.

In the case at bar, there was not only an absence of any showing of insolvency or impaired financial condition, but there was affirmative evidence to the contrary. Such a state of facts does not authorize the exercise of the power of supervision. A company's failure, through financial inability, to meet its obligations may constitute a basis for supervision; but neither the letter nor the spirit of the law lends color to the exercise of this power where, as here, there is no evidence of inability, but a denial of liability to pay the claims in question. The determination of this matter may well be left to the courts where the law has placed it.

It is not only reasonably inferable, but a legitimate conclusion from the facts, that if relator, upon notice of respondent's contemplated action, had paid the claims of the insurance company, other cause for supervision would not have been found to exist by respondent. Such a construction is not in accord with the purpose of the law, and if pursued, would result in the transformation of the Insurance Department into a collecting agency. We are, therefore, of the opinion that there is such an usurpation of power evident on the part of the respondent, as to authorize us in making our preliminary rule final. It is so ordered.

*Graves, Woodson* and *Williams, JJ.,* concur; *Bond, C. J.,* and *Faris, J.,* concur in all except paragraph 3; *Blair, J.,* dissents.