CITY OF PONTIAC v. DUCHARME.

1. MUNICIPAL CORPORATIONS—HOME RULE CITIES.

Under the home rule act cities have a general grant of rights and powers, subject only to certain enumerated restrictions, instead of former method of having only enumerated rights and powers definitely specified (1 Comp. Laws 1929, § 2228 et seq.).

2. SAME—PURCHASE OF SEWAGE DISPOSAL SITE BY LAND CONTRACT NOT ULTRA VIRES—HOME RULE CITIES.

> Under home rule act and charter of city organized thereunder, expressly conferring upon it power to acquire property in fee simple or in some lesser interest or estate either by purchase, gift or condemnation, city *held*, empowered to enter into a land contract to purchase site for sewage disposal plant, hence such undertaking was not *ultra vires* (1 Comp. Laws 1929, § 2228 *et seq.*; § 2235 (2) ; Pontiac charter, chap. 2, § 1).

3. SAME—HOME RULE CITIES—CHARTERS.

> A city with a home rule charter may enact and put into its charter any provisions limited to purely municipal government that it may deem proper so long as they do not run contrary to the Constitution or to any general statute.

4. SAME—SEWERS—CONTRACTS—ORDINANCES—CHARTERS.

> City ordinance providing for bond issues expressly specifying purpose was to raise money to construct, improve, enlarge and extend sanitary sewer system *held*, a sufficient compliance with home rule city charter requiring either making of an appropriation or levying of a special assessment before city could let contracts for such purposes (1 Comp. Laws 1929, § 2228 *et seq.*; Pontiac charter, chap. 9, § 16).

5. SAME—SEWERS—APPROPRIATION—CONTRACTS.

> Consummation and ratification of contract to purchase site for sewage disposal plant for home rule city *held*, a sufficient appropriation of funds then available for payment of purchase price under contract (1 Comp. Laws 1929, § 2228 *et seq.*; Pontiac charter, chap. 9, § 16).

6. SAME—CONTRACT TO PURCHASE SEWAGE DISPOSAL PLANT SITE—EXECUTION—VALIDITY—AGENT FOR CITY AS UNDISCLOSED PRINCIPAL.

> Contract to purchase site for sewage disposal plant through agent of home rule city, as undisclosed principal, which was subsequently assigned to city and contract thereupon ratified and payments made thereon *held*, valid in suit by city to cancel the contract, notwithstanding failure of strict compliance with charter provisions as to proceeding by ordinance or resolution in the execution of the contract where good faith of city officials in negotiating contract in such manner is not questioned (1 Comp. Laws 1929, § 2228 *et seq.*; Pontiac charter, chap. 3, § 6, chap. 9, § 8).

7. SAME—LAND CONTRACT—FILING OF DRAWINGS.

   Liability under contract to purchase land to be used as site for sewage disposal plant may not be avoided by home rule city for failure to comply with charter provisions requiring that approved drawings, profiles and estimates for public improvements be filed with city clerk, such provisions being inapplicable to the purchase of land (1 Comp. Laws 1929, § 2228 *et seq.*; Pontiac charter, chap. 15, § 11).

8. MASTER AND SERVANT—SERVICE IN A PARTICULAR TRANSACTION.

   One who is engaged to render service in a particular transaction is neither an officer nor an employee, within the ordinary acceptance of the terms.

9. MUNICIPAL CORPORATIONS—REAL ESTATE AGENT—PERSONAL INTEREST IN CONTRACT WITH CITY.

   Real estate agent who acted for home rule city as undisclosed principal in negotiating purchase of land for site for sewage disposal plant, who received commission from vendors, took contract in his own name and assigned it to city *held*, not an employee or officer within meaning of charter declaring void every contract in which a member of the city commission, city manager or other officer or employee should be personally interested (1 Comp. Laws 1929, § 2228 *et seq.*; Pontiac charter, chap. 15, § 12).

10. APPEAL AND ERROR—EXCLUSION OF EXPERT TESTIMONY—OFFICIAL CITY COMMISSION RECORDS.

    Exclusion of testimony of expert accountant as to whether any appropriation had been made for future sewage disposal site *held*, not prejudicial in home rule city's suit to cancel contract and recover payments where no specific appropriation for particular site had been claimed and official records of city commission were already in evidence and their verity unchallenged (1 Comp. Laws 1929, § 2228 *et seq.*; Pontiac charter, chap. 2, § 1, chap. 3, § 6, chap. 9, §§ 8, 16, chap. 13, § 7).

Appeal from Oakland; Boomhower (Xenophon A.), J., presiding. Submitted October 13, 1936. (Docket No. 79, Calendar No. 38,484.) Decided December 28, 1936.

Bill by City of Pontiac, a municipal corporation, against William H. Ducharme and wife and others

to declare a land contract void, for an accounting and other relief. Bill dismissed. Plaintiff appeals. Affirmed.

*William A. Ewart*, for plaintiff.

*Henry C. L. Forler (Frank W. Atkinson*, of counsel), for defendants Ducharme.

NORTH, C. J.   By its bill of complaint the city of Pontiac seeks cancellation of a contract under which it was purchasing from defendants Ducharme a parcel of land to be used for a sewage disposal site; and also the city seeks to be reimbursed for payments heretofore made on the contract and for payments of taxes on the property. The bill of complaint was dismissed and plaintiff has appealed.

The land contract, dated September 4, 1929, provided for the purchase of a parcel of land outside the city limits of Pontiac at a price of $87,460.72. At its inception the contract ran to Lloyd S. Linton as vendee. As a matter of fact, Mr. Linton was acting for the city of Pontiac as an undisclosed principal. Of this the vendors had no knowledge until sometime later. The contract recites a down payment of $30,000, the balance of $57,460.72 to be paid in semi-annual instalments. On September 13, 1929, the vendee's interest was assigned to plaintiff herein which assumed and agreed to perform the contract. The city made five subsequent semi-annual payments, each approximately in the amount of $7,000. The city also paid taxes on the property on three occasions, these taxes totaling upwards of $6,000. At and prior to the inception of this land contract the city of Pontiac was experiencing an unusual growth. It became obvious that among other municipal improvements, its sewage system must be

extended and improved. The city, acting through Mr. Linton, decided to purchase the land in question for a sewage disposal site. It is a fair inference from the record that the city officials consummated this transaction in the name of Mr. Linton in the good-faith belief that it would be advantageous for the city to proceed in that way. The contract was negotiated between Mr. Linton and one Clarence S. Vaughan, who represented the vendors.

It is the claim of appellant that the contract for the purchase of this land is void because the transaction is in violation of the city's charter and *ultra vires*. Pontiac has a city charter under the Michigan home rule act. 1 Comp. Laws 1929, § 2228 *et seq*. By its charter, chapter 2, § 1, the city is expressly vested with the following powers:

"(It) may acquire property in fee simple or lesser interest or estate by purchase * * * for any municipal purpose, * * * (it) may create, provide for, construct, regulate and maintain all things in the nature of public works and improvements; * * * may do any and all things needful, necessary or proper to furnish, supply, control and regulate water supply, sewage, sewage disposal, sanitation, and sanitary control within or without the boundaries of said city, upon such terms and conditions as the commission shall decide; * * * may exercise all powers which now or hereafter it would be competent for this charter to enumerate as fully and completely as though said powers were specifically enumerated herein; * * * all such powers, whether expressed or implied, shall be exercised and enforced in the manner as shall be provided by ordinance, resolution or the general laws of the State."

Chapter 9, § 16 of the city charter reads:

"No public work or improvement shall be commenced, or expenditure made, nor any contract

therefor be let or made (excepting as herein otherwise provided) until an appropriation has been made therefor or a special assessment shall have been levied to pay the cost and expenses thereof. No such work or improvement shall be paid for, or contracted to be paid for, except from the proceeds of such appropriation or special assessment or from the proceeds of bonds or other obligations issued in anticipation of the collection of such appropriation or special assessment.''

The charter contains the further provisions:

''Bonds may be issued for the following purposes: Sewers, drains, sewage disposal and treatment works and for enlarging, improving or extending same.'' Chap. 10, § 2.

''Whenever the commission shall desire to issue bonds, they shall pass an ordinance, stating the amount of bonds to be issued and the purpose thereof.'' Chap. 10, § 3.

''The commission may establish, construct and maintain a sewage system, sewage disposal systems, sewers and drains whenever and wherever necessary, and of such dimensions and materials, and under such regulations as they may deem proper.'' Chap. 13, § 7.

Appellant's first contention is that because of the city's lack of expressed or implied power to enter into a contract for the purchase of land, the contract here in suit is *ultra vires* and void. In this connection appellant's counsel points out that cities have no powers not expressly conferred upon them by law or implied by other powers which are conferred, citing *Ironwood Water Works Co.* v. *Ironwood,* 99 Mich. 454; *McCurdy* v. *County of Shiawassee,* 154 Mich. 550. However, in this connection it is important to be mindful of decisions of this court subsequent to the passage of the home rule act.

"The new system (referring to the home rule act) is one of general grant of rights and powers, subject only to certain enumerated restrictions, instead of former method of only granting enumerated rights and powers definitely specified. We must assume the act was passed with that intent and construe it accordingly." *Gallup* v. *City of Saginaw,* 170 Mich. 195.

Conceding the limitation of the powers of chartered cities, still we think appellant places too narrow a construction upon the pertinent charter provisions. Section 1 of chapter 2 above quoted expressly empowers the city of Pontiac to acquire property either in fee simple or in some lesser interest or estate either by purchase or in other ways provided in the charter, such as gift, condemnation, etc. It would be placing too narrow a construction upon the power of the city to acquire property "by purchase" to hold that the city could not enter into a contract to purchase such property. Hence it cannot be said that such an undertaking was *ultra vires* or not within the charter powers of the city.

Nor can appellant's contention be sustained that the Pontiac city charter provision, if construed as broadly as above indicated, will include a power in excess of those which may be given to cities under the home rule act of this State. Instead the act contains the following provision:

"Each city may in its charter provide: * * *

"(2) For the acquisition by purchase, gift, condemnation, lease or otherwise of private property, either within or without the corporate limits * * * for any public use or purpose within the scope of its powers, whether herein specifically mentioned or not." 1 Comp. Laws 1929, § 2235.

"A city with a home rule charter may enact and put into its charter any provisions for its govern-

ment that it deems proper so long as they do not run contrary to the Constitution or to any general statute, but they must be limited, to be sure, to matters of purely municipal government.'' 1 McQuillin, Municipal Corporations (2d Ed.), p. 841.

Appellant also asserts that no appropriation was made by the city to cover the contract obligation, as required by chapter 9, § 16, of the charter above quoted. If appellant were correct in this contention it would present a controlling question. *Stratton* v. *City of Detroit,* 246 Mich. 139; *Salzer* v. *City of East Lansing,* 263 Mich. 626. But under this record we find that in advance of the contract of purchase the city had provided by bond issues sufficient funds to liquidate the obligation. Nowhere in its brief does appellant challenge the accuracy of the following finding of the trial judge:

''The proofs disclose that there was upon the date the contract was entered into, and at the time of the passage of the resolution ratifying all things done in connection with this land purchase, more than $100,000 on hand in the sewer fund raised by the sale of bonds.''

The respective city ordinances providing for these bond issues expressly specified that the purpose of raising the money was to construct, improve, enlarge and extend the sanitary sewer system. We cannot agree with appellant that under such circumstances a further and more specific appropriation of the funds raised by the sewer and sewage disposal bond issues was a necessary prerequisite to a valid land contract to purchase a site for a sewage disposal plant. As just noted, this was included in the purpose for which the bond issues were authorized. 4 McQuillin Municipal Corporations (2d Ed.), p. 319, § 1555. As to such funds not previously al-

located to some other particular purpose, consummation and ratification of the contract purchase was a sufficient appropriation, the funds being then available out of which the contract price could be paid.

"Where a city, prior to the time of accepting an offer for the sale of certain lots for park purposes, had raised by the sale of bonds, duly authorized, a sum largely in excess of the amount expended for such purposes, it could not defend a bill for specific performance on the ground that there were no funds available; since, in the contemplation of law, such money was in the fund for which it was authorized." *McArthur* v. *City of Cheboygan* (syllabus), 156 Mich. 152.

Appellant also seeks to assert invalidity of the contract in suit on the ground of failure to comply with the following charter provisions:

"The commission shall act only by ordinance or resolution." Chap. 3, § 6.

"No liabilities shall be incurred by any officer or employee of the city, except in accordance with the provisions of the annual appropriation ordinance, or under continuing contracts and loans authorized under the provisions of this charter." Chap. 9, § 8.

It is true that formal action was not recorded in the city proceedings at the inception of the contract taken by Linton in behalf of the city. However, the members of the commission discussed the matter at their meetings and were fully advised. Their good faith in taking this action in behalf of the city is not questioned. As hereinbefore noted the members of the commission were prompted by proper motives in avoiding publicity. After the contract was executed and assigned by Linton to the city, formal action was taken by the city commission ratifying

the whole transaction. The city continued making semi-annual payments on the contract and paid taxes on the property. This contract being one within the power of the city to consummate, subsequent ratification by the commission rendered the whole transaction valid, notwithstanding failure of strict compliance with charter provisions. *City of Saginaw* v. *Consumers' Power Co.*, 213 Mich. 460, 480; *L. W. Kinnear, Inc.*, v. *City of Lincoln Park*, 260 Mich. 250.

Nor can the city avoid liability on this land contract because of noncompliance with chapter 15, § 11 of the charter, which reads:

"No public improvement, costing more than $1,000, shall be contracted for or commenced until drawings, profiles and estimates for same shall have been submitted to the commission and approved by it; and the same or a copy thereof, shall thereafter remain on file in the office of the clerk, subject to inspection by the public."

Reference to the general provisions of chapter 15, as well as to the context of section 11, convincingly discloses that it is in no way applicable to the purchase of land, but instead to the construction, alteration or maintenance of buildings, public works, etc.

Chapter 15, § 12, of the Pontiac city charter reads:

"No member of the commission, the manager, or any other officer or employee of the city, shall be personally interested in any contract with or for the city, nor in the expenditures of any money on the part of the city, and every such contract shall be void."

Appellant claims that because the real estate agent Linton who at the request of the city manager negotiated the sale of the Ducharme property re-

ceived a commission from the vendors, the transaction was in violation of section 12 above quoted, and that the contract is therefore void. There is no claim that Linton was a city commissioner, manager or officer, nor was he a city "employee" in the sense that the word is included in the charter.

"Within the ordinary acceptance of the terms, one who is engaged to render service in a particular transaction is neither an officer nor an employee." *Louisville, E. & St. L. R. Co.* v. *Wilson,* 138 U. S. 501 (11 Sup. Ct. 405).

Appellant through its city manager at all times knew that whatever compensation Linton was to receive was to be paid by the vendors. As to Linton the city was merely a prospective purchaser. Nothing was paid him by the city. He was not an employee of the city. His part in this transaction was not violative of the charter provision just above quoted.

At the hearing in the circuit court plaintiff produced as a witness an expert accountant and asked him the following question:

"I will ask you if you found any evidence of any appropriation of any moneys for the purchase of a future sewage disposal site from the books of account of the city of Pontiac?"

Objection to the question was sustained, the court stating that he understood there was no claim made that there had been an appropriation specifically made for this particular item before the land was purchased. There is no dispute about this phase of the case, and there was already in evidence the records of all city commission proceedings from 1926 to 1931 inclusive. These records spoke for themselves. Their verity was not challenged. They

could not be altered by the testimony of an expert accountant. The ruling was not prejudicial.

No other question meriting discussion is presented. It may be noted that parties other than the Ducharmes were made defendants in this case, but relief is now claimed by plaintiff and appellant against William H. Ducharme only. For that reason reference to the other defendants has not been necessitated. The decree entered in the circuit court is affirmed, with costs to appellees.

FEAD, WIEST, BUTZEL, BUSHNELL, SHARPE and TOY, JJ., concurred. POTTER, J., did not sit.