SEBEWAING INDUSTRIES, INC., *v.* VILLAGE OF SEBEWAING.

1. MUNICIPAL CORPORATIONS—REVENUE CERTIFICATES—DEBT LIMITATIONS—FRANCHISES—FORECLOSURE.

Proposed revenue certificates, to be issued by a village subject to the general village act without submission to voters for approval, which involved no franchise, were not secured upon the property nor the entire revenues of the utility and which did not provide for foreclosure, were not bonds authorized by the Constitution to be issuable for acquisition and operation of public utilities beyond general limit of bonded indebtedness but which would include a franchise and permitted foreclosure (Const 1908, art 8, §§ 23–25, art 10, § 21, as amended in 1948; CL 1948, § 61.1 *et seq.*).

2. SAME—UTILITY REVENUE CERTIFICATES—DEBT LIMITATIONS.

Proposed revenue certificates, to be issued by a village subject to the general village act without submission to voters for approval, which did not involve the general faith and credit of the village and required satisfaction of the holder's obligation to be made solely from net revenues of the electric plant, were not obligations of the village which could be satisfied out of the general fund of the village (Const 1908, art 8, §§ 23–25; CL 1948, §§ 72.3, 72.5).

---

REFERENCES FOR POINTS IN HEADNOTES

[1-4, 6-8] 38 Am Jur, Municipal Corporations §§ 432, 559–570.
[1-4, 6-8] What are public utilities within constitutional or statutory provisions relating to purchase, construction, or repair of same by municipal corporations.  9 ALR 1033; 35 ALR 592.
Application to permanent improvements of constitutional or statutory provision against municipality exceeding current revenue. 41 ALR 790.
Obligation for local improvements as within municipal debt limit. 33 ALR 1415.
Constitutionality and construction of statute which provides for the use of the general funds or credit of the municipality in event of default or delay in payment of, or inability to collect, or insufficiency of, special assessments for local improvements. 70 ALR 176; 135 ALR 1287.
[7, 8] 38 Am Jur, Municipal Corporations § 559 *et seq.*
[9] 50 Am Jur, Statutes §§ 244, 429.
[10, 11] 50 Am Jur, Statutes § 428.
[12] 14 Am Jur, Costs § 91.

3. Same—Villages—Lighting Works—Powers of Council—Taxation—Borrowing Money.

The provision of the general village act that the council may "raise and expend * * * such sum as it may deem advisable" for repairing, altering or extending the village lighting works, an authority to levy a tax, does not authorize the village to borrow or become obligated for the cost of purchased equipment, pledge future utility revenues for that purpose, agree to raise rates to consumers in the future, if necessary to pay the obligation, or promise not to dispose of but to keep the utility in operation and competition out of business until the equipment is paid for (CL 1948, § 72.5).

4. Same—Obligations Payable From Utility Revenues—Debt Limitations.

Obligations of municipal corporation, to be secured by and payable solely from revenues of utility acquired with the proceeds of such obligations, do not constitute debts of the municipal corporation within the meaning of provision of the Constitution limiting the incurring of indebtedness, since they do not constitute charges against the general fund. or revenues to be derived from taxation (Const 1908, art 10, § 21, as amended in 1948).

5. Same—Villages—Powers—Constitutional Law—Statutes.

Villages are not autonomous entities with inherent powers but have only such powers as are granted by the State through constitutional provision or statutory enactment.

6. Same—Villages—Utility Revenue Certificates—Borrowing Power.

Proposed revenue certificates to be issued by a village subject to the general village act, to purchase additional equipment for an electric plant, which did not involve the general faith and credit of the village, involved no franchise, were not secured upon the property nor the entire revenues of the utility and did not provide for foreclosure, were outside the contemplation of provisions of the Constitution authorizing municipalities to acquire, own and operate certain public utilities (Const 1908, art 8, §§ 23–25).

7. Same—Public Utilities—Constitutional Law—Statutes.

Provisions of the Constitution authorizing municipalities to acquire, own and operate certain public utilities are not self-executing, but require statutory implementation, particularly in the matter of restricting power to borrow money and contract debts (Const 1908, art 8, §§ 20, 23–25).

8. Same—Public Utilities—Borrowing Power.

The power of a municipality to acquire and improve its utility does not carry with it an implied power to borrow for that purpose other than by the means expressly authorized (Const 1908, art 8, §§ 20, 23–25; CL 1948, § 72.5).

9. Statutes—Construction—Express Powers.

Express mention in a statute of one thing implies the exclusion of other similar things.

10. Same—Exercise of Powers.

The mode of exercising a power granted by statute and none other must be followed when a statute creates an entity, grants it powers and prescribes the mode of their exercise.

11. Same—Powers—Inferences.

Powers specifically conferred by statute cannot be extended by inference, the inference being that it was intended that no other or greater power was given than that specified.

12. Costs—Public Question—Additions to Municipally-Owned Electric Plant.

No costs are allowed in suit to enjoin a village from purchase and installation of additional equipment in a municipally-owned electric plant, a public question being involved.

Adams, J., dissenting.

Appeal from Huron; Libbers (John G.), J., presiding. Submitted April 14, 1953. (Calendar No. 45,762.) Decided October 5, 1953.

Bill by Sebewaing Industries, Inc., a Michigan corporation, against Village of Sebewaing and others to restrain defendants from proceeding with or consummating contract for purchase of equipment for electric plant. Temporary injunction dismissed on motion. Plaintiff reviews by appeal in nature of mandamus. Reversed and remanded.

*Howell Van Auken* and *Lucking, Van Auken, Schumann & Greiner*, for plaintiff.

*C. W. Hatfield* and *Warner, Norcross & Judd* (*C. A. Bradshaw*, of counsel), for defendants.

*Amici Curiae:*

Fairbanks-Morse Company by *Miller, Canfield, Paddock & Stone.*

A. C. Hoch and others by *Thomas R. McAllister.*

ADAMS, J. (*dissenting*). This is an appeal in the nature of mandamus from an order of the circuit court for Huron county dissolving a temporary injunction issued *ex pàrte* against the village of Sebewaing and the members of the public lighting and water commission of that village, defendants and appellees. The injunction issued upon the petition of Sebewaing Industries, Inc., appellant, restrained defendants from the purchase and installation of additional equipment in the municipally-owned electric plant until such transactions were submitted to the electors of the village for approval.

In 1911 the village, by appropriate action and under the provisions of PA 1895, No 3 (CL 1948, § 61.1 *et seq.* [Stat Ann § 5.1201 *et seq.*]), acquired a municipal electric plant. The plant has supplied electric energy to the village and its citizens since it was acquired and it is now administered under the jurisdiction of the public lighting and water commission. In 1952 the village council decided to purchase a new generating unit to replace a much smaller one which had been unused since 1947 and, after taking bids, approved of a proposition submitted by the National Supply Company to purchase one 1136-kilowatt, 1600-horse-power diesel engine and electric generating unit, together with certain other equipment for the sum of $122,632. Of this sum, $5,632 was to be paid in cash and the balance of $117,000 in revenue certificates, the certificates to be payable with interest over a period of 14 years from net revenues of the electric system. No approval by the electors of

the village was sought for either the purchase of the
equipment or the issuance of revenue certificates.

Plaintiff, a taxpayer doing business in the village
and a user of electric energy from the municipal sys-
tem, takes the position that if the revenue certificates
are issued by the municipality in payment for the
equipment, they will in fact be revenue bonds illegal-
ly issued by the village because of failure to comply
with provisions of PA 1895, No 3, requiring
approval by a 3/5 majority of the electors of the vil-
lage.  It is not claimed that either the members of
the village council or the members of the public light-
ing and water commission have acted fraudulently
or with improper intent.

The village obtains its authority to own and
operate a municipal electric plant from Constitution
1908, art 8, §§ 23, 24 and 25, as implemented by PA
1895, No 3.  This act, known as the general village
act, constitutes the charter of the village without
amendment insofar as the present litigation is con-
cerned.

Chapter 12, § 5, of that act (CL 1948, § 72.5 [Stat
Ann § 5.1424]) reads as follows:

"After lighting works have been purchased or con-
structed as aforesaid, in such village, the council
may then raise and expend in making repairs or al-
terations, or in extending such works, such sum as it
may deem advisable without submitting the question
to the electors of the village: Provided, That the
sum to be so raised, in any 1 year, shall be included
in, and shall not increase the total amount which, by
the provisions of section 1 of chapter 9 of this act,
the council is authorized to raise: Provided further,
That upon approval of 3/5 of the electors of such
village, the council may, in lieu of raising such funds
by tax, as is provided by section 1 of chapter 9, bor-
row money and issue bonds for such repair, altera-
tion or extension of such lighting works, under the

same provisions of section 3 as apply to the acquiring or construction of such works."

It is the plaintiff's contention that the section above quoted provides a specific and exclusive method of municipal borrowing for the extension and alteration of the electric system, while defendants take the position that the section grants to the village council the authority to make such alterations and changes in the system as it deems advisable without submitting the matter to a vote of the electors and that the 2 provisos establish methods of raising the necessary funds which are not exclusive of other available methods. They conclude that since neither village funds nor avails from bonds is being used to effect the purchase, they are not required to submit the matter to the electorate.

The proposed contract between the village and the National Supply Company specifically states that no indebtedness, obligation or duty created or incurred by the village thereunder shall require payment from taxes or general funds or constitute an indebtedness within the meaning of the provisions of the State Constitution governing the limits of municipal indebtedness. It further provides that the revenue certificates shall be paid from the net revenues of the utility after payment of the legitimate and necessary operations and expenses thereof, and that the village will establish and maintain utility rates which will provide sufficient funds for such purpose. Further, the village will operate the electric plant until all obligations under the contract have been fully discharged and will prevent any competition with such municipal utility during that period. While title to the purchased equipment remains in the National Supply Company until the revenue certificates are satisfied, neither the contract nor the certificates provide any method of fore-

closure or enforcement of the obligation other than the right to be satisfied out of net revenue.

Under such conditions, the obligation created by the proposed contract does not pledge the general faith and credit of the village and does not create an indebtedness that is limited in amount by our State Constitution.*

" 'The overwhelming weight of judicial opinion in this country is to the effect that bonds, or other forms of obligation issued by States, cities, counties, political subdivisions or public agencies by legislative sanction and authority, if such particular bonds or obligations are secured by and payable only from the 'revenues realized from a particular utility or property, acquired with the proceeds of the bonds or obligations, do not constitute debts of the particular State, political subdivision or public agency issuing them, within the definitions of "debts" as used in the constitutional provisions of the States having limitations as to the incurring of indebtedness.' " *California Toll Bridge Authority* v. *Wentworth,* 212 Cal 298, 302 (298 P 485) as quoted with approval in *Attorney General, ex rel. Eaves,* v. *State Bridge Commission,* 277 Mich 373.

There being no constitutional limitation upon the amount of the obligation to be incurred by the village, does it follow that the revenue certificates proposed by the contract can be legally issued without the approval of the electorate?

Defendants contend that no tax money or general fund money is required for the purchase, that no actual borrowing is involved and that therefore they have elected to utilize a method of financing not specifically provided by statute but not prohibited. It is their further claim that in the absence of a specific prohibition, the right to use an alternative

---

* See Const 1908, art 10, § 21, as amended in 1948.—REPORTER.

method of financing is implied, quoting Justice
Campbell as follows:

"If cities were new inventions, it might with some
plausibility be claimed that the terms of their char-
ters, as expressed, must be the literal and precise lim-
its of their powers.   *   *   *   There are many flour-
ishing cities whose charters are very short and
simple documents.   Our verbose charters, except in
the limitations they impose upon municipal action,
are not as judiciously framed as they might be, and
create mischief by their prolixity.   But if we should
assume that there is nothing left to implication, we
should find the longest of them too imperfect to make
city action possible." *Torrent* v. *City of Muskegon,*
47 Mich 115 (41 Am Rep 715).

It becomes necessary, therefore, to determine
whether the method used by the village to purchase
and finance equipment falls within 1 of the methods
prescribed by statute or Constitution and is governed
by established procedural requirements, or is, on the
other hand, a permitted alternative not specifically
mentioned in either the statute or Constitution.

Constitution (1908), art 8, § 24, grants authority
to cities or villages to acquire and operate public
utilities and issue bonds therefor beyond the general
limit of bonded indebtedness prescribed by law and
then says:

"But [such bonds] shall be secured only upon the
property and revenues of such public utility, includ-
ing a franchise stating the terms upon which, in case
of foreclosure, the purchaser may operate the same,
which franchise shall in no case extend for a longer
period than 20 years from the date of the sale of such
utility and franchise on foreclosure."

The bonds contemplated by this section of the
Constitution are therefore those which are secured
upon the property and revenues of the utility, includ-
ing the franchise, and contemplate foreclosure in the

event of default. The revenue certificates to be issued by the village of Sebewaing do not have such characteristics. They are not secured upon the property nor the entire revenues of the utility. No franchise is involved and no foreclosure is contemplated nor can be had.

"(6) It is claimed PA 1933, No 94, is invalid because violative of article 8, § 24 of the Constitution, which provides that a city may issue mortgage bonds beyond the general limit of the bonded indebtedness prescribed by law to be secured only upon the property and revenue of such public utility, including a franchise, stating the terms upon which in case of foreclosure the purchaser may operate the same, et cetera. The difficulty with this contention is that the city of Ann Arbor does not propose to issue mortgage bonds; does not propose to place a mortgage upon its sewage disposal plant; the bonds which it issues are not secured by the property of the sewage disposal plant; there can be no foreclosure under these bonds; the lien granted by the statute is solely upon the revenues to be derived from its operation." *Young* v. *City of Ann Arbor,* 267 Mich 241, 254.

Nor are the revenue certificates such evidence of indebtedness as is contemplated by chapter 12, § 5 of the general village act (CL 1948, § 72.5 [Stat Ann § 5.1424]). That section authorizes the village to borrow money or issue bonds for the repair, alteration or extension of lighting works under the provisions of chapter 12, § 3, of the same act. Section 3 (CL 1948, § 72.3 [Stat Ann § 5.1422]), after granting authority for the issuance of bonds which may exceed debt limitations, further defines such bonds as securing indebtedness "on the general faith and credit of such village." The revenue certificates contemplated by the instant contract clearly and unequivocally state that they do not involve the general

faith and credit of the village. They are not obligations of the village that may be satisfied out of any village funds, but leave the holder to an exclusive means of satisfaction out of net revenues of the utility.

" 'That bonds issued only against a fund to be created from the revenues of the system would not create a debt against the city.' " *Faulkner* v. *City of Seattle*, 19 Wash 320 (53 P 365), as quoted with approval in *Young* v. *City of Ann Arbor, supra.*

While those sections of the Constitution and statute last referred to provide for financing repairs and extension of municipal utilities by taxes or the borrowing of money through the issuance of bonds, it must be conceded that these methods of financing or paying such costs are not the only available avenues. The payment for such acquisition could be, and in the case of minor repairs would inevitably be made out of current utility revenues. In addition, more substantial sums could properly be accumulated in a depreciation fund to provide for the cost of major repairs or alterations. The establishment of a depreciation fund was considered by this Court in the case of *Wolgamood* v. *Village of Constantine,* 302 Mich 384, and the existence of such a fund acknowledged and approved but held to be not necessarily a mandatory item of municipal utility financing, at least to the extent of equaling replacement costs.

We conclude in summation that the revenue certificates which the village of Sebewaing has agreed to issue in payment for new utility equipment are not evidence of such indebtedness as is specified in constitutional limitations and that they are not a type of obligation contemplated by sections 23, 24 and 25 of article 8 of our State Constitution (1908) nor by PA 1895, No 3, chap 12, § 5. It is our further conclusion that the methods of financing municipal utility ex-

tensions set forth in the Constitution and in PA 1895, No 3, are not exclusive methods of obtaining funds for such extensions and that there are other acceptable alternatives.

We have held that the right of a city to acquire property includes the power to enter into a contract for its purchase. *City of Pontiac* v. *Ducharme,* 278 Mich 474. We have also held that the Court will not intervene in the exercise of the granted discretion of public officials.

" 'In order to warrant the interposition of a court of equity in municipal affairs, there must be a malicious intent, capricious action or corrupt conduct, something which shows the action of the body whose acts are complained of did not arise from an exercise of judgment and discretion vested by law in them.' " *Veldman* v. *City of Grand Rapids,* 275 Mich 100, 113, as quoted with approval in *Wolgamood* v. *Village of Constantine, supra.*

Under the provisions of PA 1895, No 3, the village council had the right to extend the public utility and to expend such sums as they deemed advisable without submitting the question to the electors of the village. In the exercise of their discretion they elected to purchase certain equipment which they deemed essential to the proper operation of the utility and to pay for it in a manner not specifically spelled out by law and not prohibited. Since they were carrying out an authorized activity of the village government, this Court will not disturb their decision.

" 'Whether, under the statute, a town may adopt municipal ownership of utilities seems to be a question of policy to be determined by an election. But, having once entered into the business, as here shown, an election is not necessary for the purpose of deciding an engineering choice as to the type of equipment that shall be originally installed, or for necessary replacements because of inefficiency or obso-

letencss. The board of trustees of the town must, of necessity, be and they are authorized to exercise a business discretion in the management, operation, and maintenance of the utility intrusted to their care. These are affirmative duties resting upon town boards, and to that end they may do the things necessary to accomplish a complete performance of the several items of the plant in order to render to the public the service contemplated when the utility was acquired.' " *Indiana Service Corp.* v. *Town of Warren,* 206 Ind 384 (189 NE 523), as quoted with approval in *Veldman* v. *City of Grand Rapids,* 275 Mich 100, 118.

Plaintiff raises a further question as to the legality of the election in 1911 authorizing the acquisition of the electric system. We decline to pass upon that issue for the reason that it is not raised in the pleadings nor does the record show any evidence of impropriety. Plaintiff simply speculates as to the existence of error in the election because the records have not been disclosed. It is not the province of the Court to counsel with parties as to what their rights may be if undisclosed circumstances are subsequently shown to exist.

The order of the trial court dissolving the temporary injunction should be affirmed. No costs, a public question being involved.

DETHMERS, C. J. I do not concur in affirmance. Mr. Justice ADAMS writes that it is necessary "to determine whether the method used by the village to purchase and finance equipment falls within 1 of the methods prescribed by statute or Constitution * * * or is * * * a permitted alternative not specifically mentioned in either the statute or Constitution." He finds that it does not fall within Constitution 1908, art 8, §§ 23, 24 and 25, or either of the 2 alternatives provided in chapter 12, § 5, the general

village act, PA 1895, No 3 (CL 1948, § 72.5 [Stat Ann § 5.1424]). I agree. In that connection, he develops the reasons for that view as relates to the noted sections of the Constitution and the second alternative (pertaining to a borrowing approved by 3/5 of the electors) contained in chapter 12, § 5 of the statute, without discussing the inapplicability of its first alternative. Defendants' projected course of action does not fall within the first alternative because that clearly applies to and contemplates expenditures for improvements to be made out of revenues from taxes derived from the exercise of the general taxing power. The words "the council may then raise and expend * * * such sum as it may deem advisable" make obvious the legislative intent that the sum thereby authorized to be "expended" is a sum which is to be "raised", and the entire section makes manifest that the word "raise", as therein used, means the levying of a tax. Even if it were to be conceded that the word "expend", as there employed, is broad enough to include the spending of current revenues of the utility or reserves built up from previous revenues, on the theory that the express grant of power to operate the utility gives rise to the implied right to operate it at a profit and to use such profits for the benefit of the utility, the first alternative in chapter 12, § 5 definitely does not authorize defendant to borrow or become obligated for the cost of purchased equipment, to pledge future utility revenues for that purpose, to agree to raise electric rates to consumers in the future, if necessary for the purpose of paying the obligation, or to promise not to dispose of, but, on the contrary, to keep the utility in operation and competition out of business until the equipment is paid for, all as provided in defendants' contract with the seller. That the intended transaction involves borrowing, secured by specific pledges and funds of defendant, there can

be no doubt. The equipment is to be delivered to defendant in exchange for its delivery to seller of coupon-bearing revenue certificates, due at specified dates, serially, with interest thereon at 3-1/2%. Even though the obligations to be incurred by defendant are not, under the holdings of cited cases, debts within the meaning of constitutional limitations because they do not constitute charges against the general fund or revenues to be derived from taxation on which such limitations were designed to place a ceiling, the revenue certificates are, nevertheless, evidences of indebtedness, chargeable against future revenues—promises to pay in the future, with interest, an obligation presently assumed. The first alternative of chapter 12, § 5 of the statute contains no express, implied, or included authority therefor.

Having determined that defendants' proposal does not fall within the mentioned or any other constitutional or statutory provisions or grants of power, Mr. Justice ADAMS points out that no constitutional or statutory provision prohibits it and concludes that, therefore, the methods provided in the statute are not exclusive and "the right to use an alternative method of financing is implied", quoting, in support of such theory of implied power, from *Torrent* v. *City of Muskegon,* 47 Mich 115 (41 Am Rep 715). With that conclusion I do not agree.

Villages are not autonomous entities with inherent powers. They have only those granted by the State through constitutional provision or statutory enactment. Despite the holding in cases such as *Gallup* v. *City of Saginaw,* 170 Mich 195, and *City of Pontiac* v. *Ducharme,* 278 Mich 474, that cities enjoy a general grant of rights and powers under the home-rule act, subject only to certain enumerated restrictions, instead of the former method of having only enumerated rights and powers definitely specified, the home-rule act and the constitutional provision upon

which it is based have not altered the fact that cities must find their powers in the statute directly and can exercise only those expressly or impliedly conferred by statute. *Streat* v. *Vermilya,* 268 Mich 1; *City of Niles* v. *Michigan Gas & Electric Co.,* 273 Mich 255; *Skutt* v. *City of Grand Rapids,* 275 Mich 258; *City of Pontiac* v. *Ducharme, supra; Hudson Motor Car Co.* v. *Detroit,* 282 Mich 69 (113 ALR 1472). Not only is defendants' projected course of action outside the contemplation of article 8, §§ 23, 24, 25, but in the area in which those sections have application they are not self-executing, do not of themselves confer power upon a municipality, but require statutory implementation. *Sault Ste. Marie City Commission* v. *Sault Ste. Marie City Attorney,* 313 Mich 644. In this connection it is of interest to note that article 8, § 20, in directing the legislature to provide by general law for the incorporation of cities and villages, provides that such law shall restrict their powers of borrowing money and contracting debts. If it be found, then, that chapter 12, § 5 of the act operates restrictively in this particular, it can scarcely be said to be without constitutional sanction.

The power contended for by defendant not having been expressly granted nor prohibited, is it to be implied from others which are conferred? The quotation from *Torrent* v. *City of Muskegon, supra,* that charters cannot be expected to spell out in detail all powers conferred upon a city and that, of necessity, something must be left to implication was apt enough when, as there, the question was whether a city might acquire a city hall without express statutory authorization. The statute conferring the express power to function as a city being silent on the subject of where the functions of city government should be performed, it was but natural to infer from that express grant of power the implied right to func-

tion in a building acquired by the city for that purpose. The case is not authority, however, for the proposition that from the express power to operate as a city an implied power could be inferred to borrow money and assume an obligation for the purpose of acquiring a city hall. Neither does it follow from the express power conferred upon defendant to acquire and improve its utility that a power is to be implied to borrow for that purpose. Further distinguishing the instant case from *Torrent* is the fact that here the statute is not silent on the subject for which an implied power is asserted by defendant. Chapter 12, § 5 of the statute expressly provides 2 methods of financing the acquisition of the equipment in question. *Expressum facit cessare tacitum.* That which is expressed puts an end to or renders ineffective that which is implied. *Galloway* v. *Holmes,* 1 Doug (Mich) 330. So stated in the opinion of 4 members of this Court, the other concurring in the result, in *Taylor* v. *Public Utilities Commission,* 217 Mich 400 (PUR1922D, 198). *Expressio unius est exclusio alterius.* Express mention in a statute of one thing implies the exclusion of other similar things. *Perry* v. *Village of Cheboygan,* 55 Mich 250; *Weinberg* v. *Regents of the University of Michigan,* 97 Mich 246; *Marshall* v. *Wabash Railway Co.,* 201 Mich 167 (8 ALR 435) ; *Taylor* v. *Public Utilities Commission, supra; Van Sweden* v. *Van Sweden,* 250 Mich 238. When a statute creates an entity, grants it powers and prescribes the mode of their exercise, that mode must be followed and none other. *Taylor* v. *Public Utilities Commission, supra* (4 Justices) ; (2 Lewis' Sutherland Statutory Construction [2d ed], §§ 491–493). When powers are granted by statute to its creature the enumeration thereof in a particular field must be deemed to exclude all others of a similar nature in that same field. So held in *Bank of Michigan* v. *Niles,* 1 Doug (Mich)

401 (41 Am Dec 575), in which this Court, in considering powers conferred upon a bank by its charter, said:

"The very grant of specified powers under restrictions, is an exclusion of other powers in reference to the same subject matter, not granted by the charter."

Similarly, as relates to the powers of a corporation created under a general statute, 4 members of this Court, speaking in *People* v. *Gansley,* 191 Mich 357 (Ann Cas 1918E, 165), said:

"It has been held that the powers are simply such as the statute confers, and that the enumeration of them implies exclusion of all others. *Thomas* v. *Railroad Co.,* 101 US 71 (25 L ed 950) ; *Pennsylvania R. Co.* v. *Railroad Co.,* 118 US 290, 309 (6 Sup Ct 1094, 30 L ed 83)."

In *Michigan Wolverine Student Co-operative, Inc.,* v. *Wm. Goodyear & Co.,* 314 Mich 590, this Court said:

"While section 57, *supra,*\* states in the affirmative the manner in which a corporation may sell all or substantially all of its assets, under a well-established rule of statutory construction it must be held that no other or greater power is given to boards of directors by the statute than as thus specified therein.

" 'It is a well-established rule of statutory construction that where powers are specifically conferred they cannot be extended by inference, but that the inference is that it was intended that no other or greater power was given than that specified.' *Eikhoff* v. *Detroit Charter Commission,* 176 Mich 535, 540.

" 'Under the legal maxim of construction that express mention of one thing implies the exclusion of

\* PA 1931, No 327, § 57 (CL 1948, § 450.57 [Stat Ann § 21.57]).— REPORTER.

other similar things, there is reason in the contention
that, the act having expressly named certain liens
made subordinate, it by implication excludes others
not mentioned, upon the presumption that, having
designated some, the legislature designated all it
was intended the act should include.' *Marshall* v.
*Wabash Railway Co.*, 201 Mich 167, 172 (8 ALR 435).

" 'It is a familar rule that inclusion by specific
mention excludes what is not mentioned.' *Van
Sweden* v. *Van Sweden*, 250 Mich 238, 241.

" ' "It is a general principle of interpretation that
the mention of one thing implies the exclusion of an-
other thing; *expressio unius est exclusio alterius.*"
25 RCL, p 981.' *Dave's Place, Inc.*, v. *Michigan
Liquor Control Commission*, 277 Mich 551, 555."

The *Eikhoff Case*, mentioned in the above quota-
tion, involved the statutory powers of a city charter
commission. There we held that the power to unseat
one of its members, being absent from its statutorily
enumerated powers, such power in the commission
could not be implied. In *Dearborn Township v.
Dearborn Township Clerk*, 334 Mich 673, the Michi-
gan Constitution of 1908, art 7, § 16, was the subject
of construction. It reads:

"In civil cases, justices of the peace shall have ex-
clusive jurisdiction to the amount of 100 dollars and
concurrent jurisdiction to the amount of 300 dollars,
which may be increased to 500 dollars, with such
exceptions and restrictions as may be provided by
law. They shall also have such criminal jurisdiction
and perform *such duties* as shall be prescribed by
law." (Emphasis supplied.)

The question was whether the words "such duties",
as therein used, included nonjudicial duties. We
said:

"There being other judicial duties not enumerated
in section 16, it appears that the rule of *ejusdem
generis* applies inasmuch as judicial duties are spe-

cifically mentioned *and such inclusion by specific mention thereof excludes other types of duties not mentioned."* (Emphasis supplied.)

Accordingly, it was held that a justice of the peace might perform judicial duties only. In *City of Detroit* v. *Township of Redford,* 253 Mich 453, plaintiff city, after annexing portions of defendant township, claimed the right to division not only of the township's real property, as provided in the home rule act, but also of the township's personal property. After giving expression to the maxim. *expressio unius est exclusio alterius*—that express mention in a statute of one thing implies the exclusion of other similar things—this Court held that because the statute provided for division of realty without a like provision as relates to personalty, the expression of the former right excluded the latter and that, hence, plaintiff could not share in defendant's personalty. In *Schurtz* v. *City of Grand Rapids,* 208 Mich 510, the defendant city had for some years owned and operated a city water plant. It contended for the right to add thereto by the acquisition of a privately-owned waterworks, without vote of the people. Section 28, title 8, of the city charter provided that a utility might be acquired, if approved by a vote of the electors. Defendant city insisted that it was not seeking the acquisition of a utility, but merely the extension of the city's existing utility and that, hence, a vote of the people was not required. In rejecting defendant city's theory, and holding that such vote was required, this Court said:

"The unequivocal language of section 28 of title 8 of the charter does not permit the construction claimed for it by defendant's counsel. It is a familiar maxim that, 'That which is expressed makes that which is implied to cease.'"

Order dissolving temporary injunction reversed and cause remanded for trial, if deemed necessary by the parties, in accord herewith. No costs, a public question being involved.

BUTZEL, CARR, BUSHNELL, SHARPE, BOYLES, and REID, JJ., concurred with DETHMERS, C. J.