YOUNG, J.
(concurring in part and dissenting in part). I concur with the majority to the extent that it reverses the judgment of the Court of Appeals and instead holds that venue is proper under the Civil Rights Act (CRA) in the places where the allegedly discriminatory decision was made and implemented. I dissent, however, from the majority’s analysis regarding when this implementation occurs. In order to justify its interpretation that venue is always proper at an employee’s place of work, the majority holds that a violation of the CRA has not occurred at the moment when an employer communicates a discriminatory employment decision to an employee. This conclusion is contrary to the basic principle that the CRA violation occurs with the convergence of a prohibited act and a discriminatory intent. In light of that principle, I believe that the communication of the discriminatory decision is itself the CRA violation. Thus, once an adverse employment action is actually communicated, a violation has occurred and the plaintiffs claim becomes actionable, thereby making venue proper under the plain language of the CRA only in those places where the violation occurred. I also dissent from the majority’s related holding that where an employee physically works provides an independently proper place of venue, even when a violation of the CRA did not occur in that location. While the location of employment may present a convenient or logical forum, because it is not necessarily where a statutory violation occurs for the purposes of the CRA’s venue provision, I *170 dissent from the portion of the majority’s opinion manufacturing it as a proper venue.
ANALYSIS
The venue provision within the CRA provides, in relevant part: “An action commenced pursuant to [MCL 37.2801(1)] may be brought in the circuit court for the county where the alleged violation occurred, or for the county where the person against whom the civil complaint is filed resides or has his principal place of business.”[1] The CRA itself describes what constitutes a violation. It provides, among other things, that an employer shall not “[f]ail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment ... because of... race ... .”[2]
Our interpretation of this statute is governed by clear and uncontroversial rules of statutory construction. “In interpreting statutory language, this Court’s primary goal is to give effect to the Legislature’s intent. If the Legislature has clearly expressed its intent in the language of the statute, that statute must be enforced as written, free of any ‘contrary judicial gloss.’ ”[3] In doing so, “[w]e first review the language of the statute itself. If it is clear, no further analysis is necessary or allowed to expand what the Legislature clearly intended to cover.”[4]
*171 The language of the CRA clearly requires that a defendant commit an actus reus (an adverse employment action, such as a “discharge”) with a specific mens rea (a discriminatory intent) in order to violate its provisions. Moreover, a violation of the CRA only occurs when an improper discriminatory intent is actually communicated within the context of the adverse employment action.[5] Stated otherwise, for venue purposes, I believe that a violation occurs under the statute only at the time and in the place or places where the actus reus and the 'mens rea converge: where the defendant implements the discriminatory adverse employment action.[6]
The majority disagrees with this straightforward understanding and application of the CRA’s venue *172 provision, although it cannot explain why the convergence of the mens rea and the actus reus does not equate with a statutory violation — here, two discharges. The majority confusingly explains that “it is not the communication of the discharge that violates the CRA, it is the actual discharge of the employee from his or her employment.”[7] Yet when an employer fires an employee for a discriminatory purpose, as was alleged here, why is the communication of that adverse employment decision not itself the violation of the CRA?
I think that scarcely one in a thousand people would believe that a person is not “discharged” from employment at the moment an employer says to the employee: “You’re fired.” Yet in the context of discriminatory discharges under the CRA, the majority holds otherwise. The majority thus believes that the communication or implementation of a discriminatory decision only causes a future violation of the CRA at some later, indeterminate time (when an employee is actually prevented from returning to the workplace or performing his work duties) and is not itself the *173 actual violation of the CRA. I fail to see how this can be true. An employer who tells an employee that he is fired actually severs the employment relationship at that time; if he also communicates a discriminatory intent to the employee at this time, he has violated the CRA. Such a convergénce is more than a mere discriminatory statement devoid of meaning or consequence until some later time. The majority fails to understand that the issue of when a person is fired is inextricably linked to where the person is fired, given that the location(s) at the time the discharge occurs establish the statutory venue.[8]
The majority’s analysis on this point is also internally inconsistent. If the communication terminating employment only caused a later violation that occurred at the employee’s place of work, then only the place of employment could ever be the locus of the violation that establishes venue under the CRA. However, the majority opinion also holds that a violation may occur elsewhere at some place other than the place of employment. Under the majority’s theory, why would the place where the communication is received, if it is not the place of actual employment, ever be a proper venue if it were not the place where the actus reus and the mens rea converge to cause the violation? The majority cannot explain this anomaly.
Similarly, the majority opinion additionally provides that the “adverse employment actions in these cases occurred where plaintiffs’ place of employment was located”[9] — that is, where plaintiffs physically worked. It is difficult to see how the majority’s “place of employ *174 ment” theory of violation relates in any relevant way to the occurrence of the actual discharge.[10] In effect, the majority’s analysis establishes as a matter of law that venue is proper not only where the discriminatory communication terminating the employment occurred, but also where the “effects” of the discrimination occurred, namely at an employee’s place of work. [11]
The majority’s position is further undermined by the fact that the CRA explicitly makes the defendant’s place of business a proper venue, while at the same time it *175 says nothing about the plaintiffs place of employment. The CRA’s venue provision provides that a CRA action “may be brought in the circuit court for the county where .. . the person against whom the civil complaint is filed resides or has his principal place of business.”[12] This language underscores the fact that the majority essentially creates a new venue provision that is contrary or in addition to the statutory language regarding where a violation occurs, as well as the structure and specific language chosen by the Legislature.[13]
If the Legislature had wished to make a plaintiffs place of employment a proper venue, it could have easily *176 and explicitly done so.[14] Indeed, if the Legislature wishes to establish parallel venue provisions, it is capable of doing and has done so.[15] However, when the Legislature has not done so, this Court may not expand upon the clear language chosen by the Legislature. Simply put, the CRA’s venue provision says nothing about the plaintiffs place or locus of employment as an independent site of proper venue.
That the majority is expanding the scope of the CRA is further underscored when considering potential violations that are not discriminatory discharges, but are nonetheless CRA violations that will therefore be implicated by this decision. As previously noted, the CRA prohibits discriminatory “failures] or refus[als] to hire or recruit” and other unnamed types of general employment discrimination against a person.[16] Under the majority’s formulation, venue would be proper in a plaintiffs place of potential employment even if the plaintiff never worked in that place because of a refusal *177 to hire.[17] By way of contrast, my interpretation of the venue provision appropriately prevents venue from being established in such a location because neither the actus reus nor the mens rea — which together comprise a violation — would occur in that place. Moreover, whereas Title VII of the federal Civil Rights Act explicitly contemplates such a result,[18] the Michigan Legislature declined to adopt comparable language when it crafted Michigan’s CRA.[19] Thus, the majority’s con *178 struction ascribes additional meaning to the words of Michigan’s CRA not contemplated by the Legislature.
Finally, the majority notes several policy considerations supporting its position, but I believe that each is unavailing to displace the clear language of the statute. The majority argues that its additional rule creates another convenient forum and that it also prevents an employer from controlling the place of venue by choosing where he fires an employee. First, the resort to “convenience” as a justification for the rule in this case conflates forum non conveniens theory with the statutory venue provision.[20] They are not based on similar principles — the latter being predicated on where the forum is proper, not convenient. Additionally, even if a defendant tries to control venue by firing the plaintiff from a place wholly unrelated to the actual place of employment, the plaintiffs remedy at that time is a motion for a change of venue based on forum non conveniens.[21] It is not this Court’s duty to manufacture *179 alternative forums as a matter of law merely because they would also be convenient to the parties.
For these reasons, I would restrict venue solely to the place of the violation, as defined by where the mens rea and the actus reus converge, in accordance with the clear terms of the statute. To the extent that the majority interprets this state’s civil rights laws in a way that prevents a putative plaintiffs claims from becoming actionable the moment a violation of the CRA occurs, I dissent.
Corrigan, J., concurred with Young, J.

 MCL 37.2801(2) (emphasis added). The word “occur” is defined as “to happen; take place; come to pass.” Random. House Webster’s College Dictionary (2001).

 MCL 37.2202(l)(a). “Discharge” is not defined in the statute, but is commonly defined, in relevant form, as “to relieve of obligation, responsibility”; “to reheve or deprive of office, employment, etc.; dismiss from service.” Random House Webster’s College Dictionary (2001).

 Dep’t of Agriculture v Appletree Mktg, LLC, 485 Mich 1, 8; 779 NW2d 237 (2010) (citation omitted).

 Miller v Mercy Mem Hosp, 466 Mich 196, 201; 644 NW2d 730 (2002). Similarly, this Court has held that “a court may read nothing into an *171 unambiguous statute that is not within the manifest intent of the Legislature as derived from the words of the statute itself.” Roberts v Mecosta Co Gen Hosp, 466 Mich 57, 63; 642 NW2d 663 (2002).

 This communication is an obvious and necessary element of the statutory violation and singularly demonstrates why the line of decisions from the Court of Appeals holding that a violation occurs only at the place where the employer makes a discriminatory decision (and thus forms the discriminatory intent) was in error. See Barnes v Int’l Business Machines Corp, 212 Mich App 223, 226; 537 NW2d 265 (1995). The making of the discriminatory decision represents only the mens rea element of a CRA violation, while the communication or other implementation provides the necessary act depriving an employee of his job, which completes the statutory violation.

 Because of modern technologies, a violation may occur simultaneously in multiple locations, as this case demonstrates. Plaintiff Sharon Champion alleged just such a simultaneous violation in multiple locations in the instant case: defendant fired Champion via telephone; at the time, defendant was in Oakland County, while Champion was in Wayne County. I note, however, that these multiple locations are explicitly related to the communication, and thus implementation, of the discriminatory discharge, which is itself the violation of the statute. Regarding plaintiff Brandon Brightwell, though, there is a factual dispute about his location when defendant communicated the adverse employment decision to him. If, as defendant says is the case, Brightwell was at home in Oakland County and the phone call terminating his employment was also *172 placed from Oakland County, then the statutory violation occurred completely in Oakland County, irrespective of the fact that Brightwell worked in Wayne County.

 Ante at 165. This analysis is made even more confusing by the majority’s admission that “the actus reus and the mens rea of a CRA violation converge when a defendant communicates a discriminatory decision to an employee” and that this “convergence causes the CRA violation . . ..” This accepts precisely my stated formulation. However the majority then states that “it does not settle the issue of what constitutes discharging the employee: the communication of the discriminatory decision or removing the employee’s right to work at his or her place of employment.” Ante at 162.1 fail to see why not. If, as the majority admits, the convergence causes a violation at the time of convergence and the statute specifically and plainly defines “violation” as a “discharge,” then the issue is settled: the discharge/violation occur at the point of communication of a discriminatory decision, which by definition, is also the same time as the employee’s right to work has been removed.

 See ante at 162 & n 33. It is this failure that allows the majority simply to assert that this opinion’s criticisms “miss[] the mark” rather than address the substance of those criticisms.

 Ante at 160.

 I agree with the majority that it is the severance of employment that amounts to a discriminatory discharge. Ante at 164. The CRA’s venue provision only allows proper venue where the actual severance occurred, though, which need not necessarily be in the place where the employee worked.
To advance its argument, the majority erroneously relies on this dissent’s definition of “discharge,” which again is commonly defined as “to relieve of obligation, responsibility”; “to relieve or deprive of office, employment, etc.; dismiss from service.” Ante at 164-165 & n 37. For our purposes, the relevant words here are the verbs “relieve,” “deprive,” and “dismiss” because they add context to the statutory verb “discharge,” which is the prohibited act relevant here. Thus, it can only be the actual communication, which itself implements a discriminatory decision, that amounts to the actual “discharge” or relieving of, depriving of, or dismissing from employment. And, again, this act need not occur at the place of actual employment. Since, it is the very act of communicating a discriminatory discharge that constitutes a violation of the CRA, if that communication or implementation is not made at the workplace, then the workplace is not a proper venue for a CRA action.

 Cf. Rylott-Rooney v Alitalia-Linee Aeree Italiane-Societa Per Azioni, 549 F Supp 2d 549, 554 (SD NY, 2008) (applying New York City’s and New York State’s human rights laws and making the distinction that “when an employee is terminated in a location other than his workplace, the act of termination is the original tortious act. .. and the experience of being removed from employment is the original event causing injury,” only the latter of “which occurs at the employee’s workplace”). Notably, unlike New York City’s and New York State’s laws, Michigan’s CRA provision provides venue only in the place of the original tortious act, and not in the place of injury.

 MCL 37.2801(2). Because plaintiffs asserted that venue was proper in Wayne County, a place where defendant neither resides nor has its principal place of business, this portion of the CRA’s venue provision was not relevant to venue for this action, which instead turned on whether a violation of the CRA had occurred in Wayne County. However, this language is instructive for our purposes in determining how to interpret the disputed language relevant here.
Additionally, I do not subscribe, as the majority curiously implies, to the view that venue is limited to the places over which defendant has exclusive control. See ante at 166 n 39. This is an altogether odd argument that, to the best of my knowledge, has not been advanced by any party or justice, and certainly not by me, as such a construction would be contrary to the language of the statute. Indeed, my construction of the statute permits what the wording explicitly provides: venue is proper in the place of the violation (here, a discharge), regardless under whose control that place falls. Accordingly, venue exists where the Legislature has stated that venue should exist, and “our judicial role ‘precludes imposing different policy choices than those selected by the Legislature ....’” Robertson v DaimlerChrysler Corp, 465 Mich 732, 759; 641 NW2d 567 (2002), quoting People v Sobczak-Obetts, 463 Mich 687, 694; 625 NW2d 764 (2001).

 General rules of statutory construction support this position. “Michigan has recognized the principal of expressio unius est exclusio alterious [sic] — express mention in a statute of one thing implies the exclusion of other similar things.” Stowers v Wolodzko, 386 Mich 119, 133; 191 NW2d 355 (1971), citing Dave’s Place, Inc v Liquor Control Comm, 277 Mich 551; 269 NW 594 (1936), and Sebewaing Indus, Inc v Village of Sebewaing, 337 Mich 530; 60 NW2d 444 (1953).

 The majority contends that “[s]mee the Legislature intended the interpretation we ascribe to the language [regarding the terms ‘discharge’ and ‘violation’], there was no reason to expressly include an employee’s place of employment as an alternative basis for venue.” Ante at 165 (emphasis added). There is no indication, however, that the Legislature intended the majority’s broad construction that interprets “violation” as something other than where the actus reus and the mens rea come together. Moreover, if the Legislature intended to give those terms the meanings I have fairly ascribed to them, it would have needed to include additional language regarding the plaintiffs place of employment as an additional venue. Thus, the majority’s assertion in this regard only advances its argument if one accepts its underlying premise that an overly broad reading of the statutory terms is required.

 See, e.g., MCL 600.1629. Michigan’s general venue provision for torts explicitly makes distinctions between where the plaintiff and defendant reside in its framework establishing where venue is proper.

 MCL 37.2202(1).

 Consider, for example, a hypothetical case analogous to the facts here: a large corporation with its principal place of business in Oakland County recruits a student who also lives in Oakland County for a position in Detroit (Wayne County), yet discriminatorily refuses to hire the student for the Detroit position in violation of the CRA. Even though the student never set foot or worked in Wayne County, venue would nonetheless be proper in Wayne County under the majority’s theory that Detroit would have been the place of employment and thus the employer “remov[ed] the [potential] employee’s right to work at his or her [never-established] place of employment.” Ante at 162. Such a construction finds no support in the language of Michigan’s CRA venue provision.

 See 42 USC 2000e-5(f)(3) (“Such an action may be brought in any judicial district in the State in which the unlawful employment practice is alleged to have been committed... or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice----”) (emphasis added). If one were to adopt the majority’s reasoning when interpreting this federal venue provision, the resulting construction would either render these alternative clauses redundant or render the latter clause surplusage because under the first clause, venue would always be proper in the place of potential employment.

 The Missouri Supreme Court has come to a similar conclusion. See Igoe v Dep’t of Labor & Indus Relations, 152 SW3d 284, 288-289 (Mo, 2005). Using language that is nearly identical to Michigan’s CRA, the venue provision of Missouri’s Human Rights Act provides venue where the “unlawful discriminatory practice is alleged to have occurred.” The Missouri Supreme Court held that vacant positions in St. Louis to which plaintiff had applied did not establish St. Louis as a proper venue because “all of the acts — the receipt and review of applications, the interviews, and the decision making — all occurred” in a separate county and thus no discriminatory practice had occurred in St. Louis. Id. at 288. Most important, this was true notwithstanding the fact that venue would have been proper in St. Louis under the federal venue provision of Title VII.

 The majority opinion states that “it defies common sense to conclude that the county in which the employee actually worked for the employer would he an inconvenient forum for either party.” Ante at 167. The convenience of the forum is not at issue in this case. Moreover, when a statute makes clear where venue is proper, I am not sure why any argument that meets the low threshold of being “common sense” can vary this statutory determination. I believe that the Legislature’s choice makes “sense” — even if the majority would prefer another or an additional choice.

 This is the precise response and remedy to the hypothetical example posed in the majority opinion regarding an employer who fires a Wayne County employee while on retreat in the Upper Peninsula. See ante at 166 n 39. Indeed, the majority’s hypothetical only reaffirms and proves my criticism that the majority improperly conflates forum non conveniens theory with venue rules. Similarly, the majority’s alternative hypothetical example regarding an employee who is fired while at lunch in Canada again does nothing to disprove the reality that a statutory violation occurs when the mens rea and the actus reus converge. In such a case, the CRA venue provision provides alternative venues to ensure *179 that the plaintiff would have a Michigan forum in which to litigate his claim. See MCL 37.2801(2). And again, this forum may be relocated if it is determined to be inconvenient pursuant to forum non conveniens theory.
Moreover, the mere fact that one can conceive of an exceptional hypothetical case does not mean that we should rewrite the general rule contrary to the plain meaning of the statute. I note that most cases will likely not implicate the distinction drawn between these opinions because many, if not most, employment violations occur at a person’s place of employment. Thus, my interpretation of the venue provision does not lead to a situation that is contrary to common sense, that would deprive the parties of a convenient forum, or that will work a hardship against prosecuting potential CRA violations.